**Donald GUILLORY, Plaintiff,**

v.

**REE'S CONTRACT SERVICE, INC., Mark Bishop and Does I–V, Defendants.**

**No. 3:94–CV–417(L)(N).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 15, 1994.

Edward Blackmon, Jr., Blackmon, Blackmon & Evans, Canton, MS, for plaintiff.

Le Robinson Brown, Steen, Reynolds, Dalehite & Currie, Jackson, MS, Edward J. Currie, Jr., Currie, Johnson, Griffin, Gaines & Myers, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Donald Guillory to remand pursuant to 28 U.S.C. § 1447. Defendants Ree's Contract Service, Inc. and Mark Bishop have responded in opposition to the motion. The court, having now considered the memoranda of authorities, together with attachments, submitted by the parties in support of their respective positions, concludes that plaintiff's motion to remand should be granted.

On April 20, 1994, the plaintiff, a Veteran's Benefits Counselor employed by the Veteran's Administration, was assaulted by a client of the Veteran's Administration while at his place of employment in the McCoy Federal Building in Jackson, Mississippi. At the time of the attack against plaintiff, guard services for the McCoy Federal Building, which is owned by the United States Government, were provided by defendant Ree's Contract Service, Inc. (Ree's) pursuant to a contract with the government. Defendant Mark Bishop was employed as a security officer with Ree's and on the day of the assault, was assigned to the McCoy Federal Building.

On June 19, 1994, plaintiff filed this suit against Bishop, a Mississippi resident, and against Ree's, a nonresident corporation, alleging that the attack and his resulting injuries were proximately caused by defendant's negligence, in that they failed to provide him security and protection from injury or harm. Defendants timely removed the action to this court. In their notice, defendants stated two bases for removal: (1) The cause of action accrued in the McCoy Federal Building, a "federal enclave," and thus there is federal jurisdiction pursuant to 28 U.S.C. § 1331; and (2) the action is removable pursuant to 28 U.S.C. § 1442(a)(1).[1] These bases will be considered in turn.

Though defendants identified the "federal enclave" doctrine as one basis for removal, and though plaintiff's motion to remand is premised solely on the inapplicability of that doctrine to the case at bar, defendants have not mentioned this basis for removal in their arguments against remand. It seems, then, that defendants have abandoned this as a basis for removal.[2] That leaves for consideration 28 U.S.C. § 1442(a)(1). That statute provides for the removal of any suit filed in a state court against "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office...." Defendants argue that their provision of guard services at the McCoy Federal Building, the adequacy of which plaintiff challenges in this suit, was directed and controlled by the General Services Administration, an agency of the Unit-

---

1. As a consequence of a typographical error, defendants erroneously referenced 28 U.S.C. § 1441(a)(1) in their notice of removal rather than 28 U.S.C. § 1442(a)(1). Defendants have therefore moved to amend their notice of removal to reflect that the bases of removal were §§ 1331 and 1442(a)(1). Plaintiff opposes defendants' proposed amendment, arguing that defendants' citation of § 1441(a)(1) in the removal notice was intentional and not an error. However, inasmuch as there is no 28 U.S.C. § 1441(a)(1), the court considers it highly unlikely that the defendants' citation was anything other than an error. The court thus grants defendants' motion to amend.

2. *See Mater v. Holley*, 200 F.2d 123 (5th Cir. 1952) (discussing "federal enclave" doctrine).

ed States Government, and by a federal officer, Robert Hathcock of the Federal Protect ... Services. Defendants maintain, therefore, that their removal was proper under § 1442(a)(1).

 Section 1442(a)(1) encompasses three requisites for removal by federal officers or persons acting under them. First, since defendants are not federal officers, they must be "persons" within the meaning of the statute. Second, they must assert a colorable claim to a federal defense. And third, they must show that they are being sued for acts taken "under color of" or at the direction of the federal officer. *See Akin v. Big Three Indus., Inc.,* 851 F.Supp. 819, 822 (E.D.Tex.1994); *Fung v. Abex Corp.,* 816 F.Supp. 569, 571–72 .(N.D.Cal.1992). Defendants meet the first criteria, as they are "persons" within the contemplation of the statute.[3] The court is inclined to conclude that defendants meet the second requirement, as well. Defendants submit that they have a colorable claim to a government contractor defense as articulated in *Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). There, the Court held that "[l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle,* 487 U.S. at 513, 108 S.Ct. at 2518. Plaintiff argues that the government contractor defense does not cover civilian service contracts, such as that at issue in the case at

bar, and is instead limited to military procurement contracts. He reasons, therefore, that defendants do not have a viable federal defense. Though a number of courts have limited applicability of the government contractor defense of *Boyle* to military procurement contracts, *see, e.g., In re Hawaii Federal Asbestos Cases,* 960 F.2d 806, 810–12 (9th Cir.1992), this court finds more persuasive the reasoning of those courts which have determined that the defense applies to all contractors, not just military contractors, and that it applies to performance contracts, not just procurement contracts. *See Carley v. Wheeled Coach,* 991 F.2d 1117, 1119 (3d Cir. 1993) (collecting cases); *Richland–Lexington Airport v. Atlas Properties,* 854 F.Supp. 400, 422 (D.S.C.1994); *Lamb v. Martin Marietta Energy Sys., Inc.,* 835 F.Supp. 959, 966 & n. 7 (W.D.Ky.1993). Defendants thus likely have a colorable claim to a federal defense.[4] That, however, does not end the court's inquiry, for to demonstrate the propriety of § 1442(a)(1) removal, defendants must also show that there is a nexus between acts they performed at the direction of a federal officer or agency and the plaintiff's claim for relief. *See Akin,* 851 F.Supp. at 823–24; *Fung,* 816 F.Supp. at 572.

 The determination whether a defendant was "acting under" a federal officer depends on the "level of official control," *Ryan,* 781 F.Supp. at 948, and perhaps more to the point, whether the defendant acted sufficiently under the direction of a federal officer in the performance of the acts that form the basis of the suit. The court in *Fung* succinctly explained this standard as follows:

---

**3.** While some courts have held that corporations are not "persons" entitled to remove under § 1442(a)(1), the Fifth Circuit has recognized, at least implicitly, that the statute extends to corporate defendants. *See Peterson v. Blue Cross/Blue Shield of Texas,* 508 F.2d 55, 57 (1975) (observing, in malicious prosecution action against corporate defendants, that "each of the defendants was either an 'officer of the United States or an agency thereof, of person acting under him.' "); *see also Akin v. Big Three Indus., Inc.,* 851 F.Supp. 819, 822 (E.D.Tex.1994).

**4.** The court would emphasize that defendants are not required to show that their federal defense is meritorious in order to satisfy the second re-

quirement for § 1442(a)(1) removal; they must only show that a *colorable* claim to such a defense has been made. *See Mesa v. California,* 489 U.S. 121, 124–25, 134–35, 109 S.Ct. 959, 962, 967, 103 L.Ed.2d 99 (1989); *Akin,* 851 F.Supp. at 823 ("Although GE might or might not ultimately prevail on its government contractor defense, that issue is beside the point."); *Fung,* 816 F.Supp. at 573 ("The question is not whether General Dynamics' claimed defense is meritorious, but only whether a colorable claim to such a defense has been made."); *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 944 (E.D.N.Y.1992) (same).

If the [defendants] establish[ ] "only that the relevant acts occurred under the general auspices of" a federal officer, such as being a participant in a regulated industry, they are not entitled to § 1442(a)(1) removal. *Ryan,* 781 F.Supp. at 947; *Bakalis v. Crossland Sav. Bank,* 781 F.Supp. 140, 144–45 (E.D.N.Y.1991). A majority of courts have held that the federal official must have "direct and detailed control" over the defendant. *Ryan,* 781 F.Supp. at 947.

*Fung,* 816 F.Supp. at 572. In this case, the answer to the question of control is found in the contract between Ree's and GSA, as well as in the guard post orders prepared by GSA's contract representative.

■ The subject contract identifies Physical Security Specialist Robert D. Hathcock as the government's representative, and bestows upon him the "overall responsibility for the administration of the contract." His duties include, *inter alia,* determining the adequacy of Ree's' performance, acting as the Government's representative in charge of work at the site, and ensuring compliance with the contract requirements insofar as the work is concerned. He is also responsible for preparing guard post assignments for Ree's. In addition to the oversight provided by Hathcock, the contract requires Ree's to have an on-site supervisor who has authority to act for Ree's on a day-to-day basis at the worksite. Hathcock and Ree's' supervisor have "joint supervisory control over the day-to-day actions and duties of Ree's Contract Service security guards." [5]

A thorough review of the contract itself discloses nothing even approaching the level of official control necessary to satisfy the "acting under" requirement of § 1442(a)(1). The contract requires that Ree's "provide trained employees at all times to perform the services" prescribed by the contract, the guard post assignment record and officer's duty book. "[T]ypical duties," according to the contract, include "maintain[ing] law and order" within the areas of assignment, and performing "roving patrols" in accordance with routes and schedules established in the post assignment record. The contract further directs that Ree's perform "such ... functions as may be necessary in the event of situations or occurrences such as civil disturbances ... or ... criminal acts adversely affecting the security and or safety of the Government [and] its employees," and imposes upon Ree's the responsibility to "take all necessary precautions to prevent injury to the public or building occupants." In the court's opinion, such vague directives as "maintain law and order," perform "such functions as may be necessary" and take "all necessary precautions," belie the conclusion that Hatchcock had "direct and detailed control" over the specifics of Ree's' contract performance.

The guard post assignments, prepared by Hathcock, evidence somewhat more detailed direction respecting Ree's' responsibilities, but not enough to establish the requisite level of control. The pertinent portions of the Guard Post Assignment Record provide the following guard post duties:

2. Conduct security patrols of the building and grounds and parking area. Make at least one patrol of the interior and exterior of the building every two hours at irregular times....

5. Respond to calls for emergencies and requests for assistance....

10. Perform other duties as directed by the guard supervisor or [government's contract representative].

*OTHER DUTIES AS ASSIGNED BY YOUR SUPERVISOR.* (Emphasis in original).

Obviously, the guard post assignment merely establishes the minimum that is required of Ree's' guards; it neither purports to, nor could it reasonably be interpreted to preclude Ree's from exceeding those minimum requirements. Indeed, Hathcock, in drawing the guard assignments, expressly provided for the guards' performance of "other duties" assigned by Ree's, through its on-site super-

---

5. Wayne Spooner, Ree's' on-site supervisor, has provided the court an affidavit wherein he states that Ree's' operations are "directly overseen" by Hathcock, who has authority to "oversee, moni- tor and direct the actions of the guards." It is apparent, though, that Spooner also has authority to direct at least certain actions of the guards. *See infra.*

348

visor. That is to say, the guard post assignment expressly allows for the performance of acts that are not directed by Hathcock, or any government officer.

Certainly, the contract, as well as the guard post assignment, establishes some basic parameters within which Ree's services are to be performed. However, based on the totality of the evidence, the court can conclude only that the relevant acts occurred under the general oversight of a federal officer. Defendants simply have not demonstrated the type of detailed direction necessary to support the removal. Accordingly, the court concludes that plaintiff's motion to remand must be granted.

Based on the foregoing, it is ordered that plaintiff's motion to remand is granted.

ORDERED.