**Margaret WINTERS, Plaintiff**

v.

**DIAMOND SHAMROCK CHEMICAL COMPANY, et al., Defendants.**

**No. 1:93–CV–164.**

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 2, 1995.

Benton Musslewhite, Houston, TX, William R. Power, Pappas Power & Marcus, Chicago, IL, for Margaret Winters.

Steven Brock, Rivkin Radler & Kremer, Uniondale, NY, Morris C. Carrington, Mehaffy & Weber, Beaumont, TX, Michael Gordon, Caldwalader Wickersham & Taft, New York City, for Diamond Shamrock Chemical Company.

Steven Brock, Rivkin Radler & Kremer, Uniondale, NY, Morris C. Carrington, Mehaffy & Weber, Beaumont, TX, for The Dow Chemical Company.

Steven Brock, Rivkin Radler & Kremer, Uniondale, NY, Morris C. Carrington, Mehaffy & Weber, Beaumont, TX, John C. Sabetta, Lord Day & Lord, Barrett Smith, New York City, for Monsanto Company.

Steven Brock, Rivkin Radler & Kremer, Uniondale, NY, Morris C. Carrington, Mehaffy & Weber, Beaumont, TX, Myron Kalish, Shea & Gould, New York City, for Uniroyal, Inc.

Steven Brock, Rivkin Radler & Kremer, Uniondale, NY, Morris C. Carrington, Mehaffy & Weber, Beaumont, TX, William Krohley, Kelley Drye & Warren, New York City, for Hercules, Inc.

Steven Brock, Rivkin Radler & Kremer, Uniondale, NY, Morris C. Carrington, Mehaffy & Weber, Beaumont, TX, for Thompson–Hayward Chemical Co.

Steven Brock, Rivkin Radler & Kremer, Uniondale, NY, Morris C. Carrington, Mehaffy & Weber, Beaumont, TX, Morton B. Silberman, Clark Gagliardi & Miller, White Plains, NY, for T.H. Agriculture & Nutrition Company Inc.

## MEMORANDUM OPINION

COBB, District Judge.

Plaintiff Margaret Winters was a civilian employee who lived and worked in Vietnam. She alleges exposure to the herbicide "Agent Orange" that contained a harmful chemical compound called "dioxin."[1] Winters claims that these defendant chemical companies directly or indirectly caused this chemical to be used in Vietnam and, as a result, she suffered serious injury due to her exposure to the dioxin.[2]

Plaintiff originally filed this case in the 60th Judicial District Court in Jefferson County, Texas. Defendants removed the action pursuant to the Federal Officer removal statute, 28 U.S.C. section 1442(a)(1), and this court's original jurisdiction grounded on the federal common law governing military procurement, 28 U.S.C. section 1331. The Judicial Panel on Multidistrict Litigation found common questions of fact to exist with actions previously decided by the Eastern District of New York and transferred the case to Judge Jack B. Weinstein for disposition.

In the meantime, plaintiff filed a motion to remand contending that defendants are collaterally estopped from raising the same issues previously decided by *Ryan v. Dow Chemical Co.*, 781 F Supp. 934 (E.D.N.Y. 1992), *aff'd on other grounds*, 996 F.2d 1425 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1125, 127 L.Ed.2d 434 (1994). In the alternative, plaintiff maintains that 28 U.S.C. section 1442(a)(1) does not warrant removal of this case. Judge Weinstein chose to abstain from ruling on plaintiff's motion to remand after holding a hearing on the motion. Instead, Judge Weinstein transferred the case back to this court pursuant to 28 U.S.C. section 1404(a) on the grounds that a Texas court could better handle the complex issues of Texas conflicts rules and substantive law applicable to the present case.

With the wheels of justice having ground an excruciatingly slow 360 degrees, this court is again faced with the proper disposition of this action. Plaintiff reurges her Motion to Remand on the same grounds stated above. Finding that special circumstances exist to preclude an application of offensive collateral estoppel in this case, and finding the right of removal under 28 U.S.C. section 1442(a)(1) to be absolute when, as in this case, defendants present a colorable defense arising out of their duty or actions required by federal law, the plaintiff's Motion to Remand is DENIED.

## ANALYSIS

■ A defendant bears the burden of establishing federal jurisdiction over a suit initiated in state court. *Carpenter v. Wichita Falls Indep. School Dist.*, 44 F.3d 362, 365 (5th Cir.1995) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). Defendants first seek to invoke this court's jurisdiction based on the absolute right of removal afforded to persons acting under color of federal officers or agencies. 28 U.S.C. § 1442(a)(1). This statute, known as the Federal Officer Removal Statute, was enacted to permit federal officials, and those persons acting under them, to enjoy the sanctity of federal court jurisdiction. To successfully remove a case under section 1442(a)(1), a defendant must show that (1) they are "persons" within the meaning of the statute; (2) they must have been "acting under color of federal authority" when committing the acts leading to the instant lawsuit; (3) they must assert a colorable federal defense. *Guillory v. Ree's Contract Service, Inc.*, 872 F.Supp. 344, 346 (S.D.Miss.1994) (citing *Akin v. Big Three Indus., Inc.*, 851 F.Supp. 819, 822 (E.D.Tex. 1994); *Pack v. AC and S, Inc.*, 838 F.Supp. 1099, 1101 (D.Md.1993); *Fung v. Abex Corp.*, 816 F.Supp. 569, 571–572 (N.D.Cal.1992)).

---

1. Agent Orange is a blend of equal parts of 2,4–Dichlorophenoxyacetic Acid (2,4–D) and 2,4,5–Trichlorophenoxyacetic Acid (2,4,5–T). Depending on the method of production, this substance may contain varying amounts of 2,3,7,8 Tetrachlorodibenzo-p-dioxin which is an extremely toxic substance. *Hercules, Inc. v. United States*, 25 Cl.Ct. 616, 618 (1992), *aff'd, Hercules, Inc. v.*

*United States*, 24 F.3d 188 (Fed.Cir.1994), *cert. granted*, —— U.S. ——, 115 S.Ct. 1425, 131 L.Ed.2d 308 (1995).

2. For a historical sketch of the use of Agent Orange in Vietnam and the ensuing litigation *see Hercules*, 24 F.3d 188, and cases cited therein.

This court finds that defendants are considered "persons" for purposes of this statute. The Fifth Circuit has, at least implicitly recognized that section 1442(a)(1) applies to corporate defendants. *See Guillory*, 872 F.Supp. at 346 n. 3; *and see Akin*, 851 F.Supp. at 822. In cases where a corporation may be engaged in activities that may implement a federal policy or directive, "person" should be given a broad meaning to include companies that have acted under federal direction or authority.[3] Therefore, defendants meet the first criteria of being considered "persons" under the meaning of 1442(a)(1).

Defendants maintain that they also meet the remaining two criteria based on their actions taken under express federal direction and their claims of the federal defense of immunity under the Defense Production Act, 50 U.S.C.App. § 2061 *et seq.*, and the federal common law government contractor defense. Defendants assert that these defenses are sufficient to invoke this court's jurisdiction under 28 U.S.C. section 1442(a)(1). 28 U.S.C. section 1442(a)(1) provides:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

This statute has a long jurisprudential history.[4] For over 100 years, the Supreme Court has recognized that the Federal Government

> can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers

can be arrested and brought to trial in a State court, for an alleged offense the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,—if their protection must be left to the action of the State court,—the operations of the general government may at any time be arrested at the will of one of its members.

*Willingham*, 395 U.S. at 406, 89 S.Ct. at 1815 (quoting *Tennessee v. Davis*, 100 U.S. 257, 263, 25 L.Ed. 648 (1880)); *and see Primate Protection League v. Tulane Ed. Fund*, 500 U.S. 72, 85–87, 111 S.Ct. 1700, 1708–1709, 114 L.Ed.2d 134 (1991); *Mesa v. California*, 489 U.S. 121, 125–134, 109 S.Ct. 959, 962–967, 103 L.Ed.2d 99 (1989). *Willingham* and its offspring essentially explain that the general purpose of this statute is to protect federal agents and officers from being brought to trial in State courts for acts performed under the authority of the Federal Government. *Willingham*, 395 U.S. at 406, 89 S.Ct. at 1815; *Primate Protection League*, 500 U.S. at 87, 111 S.Ct. at 1709; *Mesa*, 489 U.S. at 136–139, 109 S.Ct. at 968–970.

Although this statute was enacted to provide for an absolute right of removal "whenever a suit in a state court is for any act 'under color' of federal office," federal jurisdiction arises only when "a federal interest in the matter" exists. *Willingham*, 395 U.S. at 406, 89 S.Ct. at 1815; *and see Boyle v. United Technologies Corp.*, 487 U.S. 500, 511–512, 108 S.Ct. 2510, 2518, 101 L.Ed.2d 442 (1988). *Mesa* enforced this federal interest requirement by clarifying the construction of section 1442(a). Noting the present-day lack of hostility of state prosecutors and state courts toward federal interests, the Court in *Mesa* reaffirmed the limitations of section 1442(a) by holding "[f]ederal officer removal under 28 U.S.C. § 1442(a) must be predicated upon averment of a federal defense." *Mesa*, 489 U.S. at 139, 109 S.Ct. at 970.

---

3. For a more complete analysis of "person" as defined by section 1442(a)(1) see *Ryan*, 781 F.Supp. at 946–950.

4. For a complete historical discourse see *Willingham v. Morgan*, 395 U.S. 402, 405–406, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969).

## 1. The Causal Connection Test

Consequently, "persons" seeking removal under section 1442(a)(1) must satisfy two requirements. A defendant must first show that a causal connection exists between what the officer or agent has done while acting under federal authority and the state prosecution.[5] A defendant must then present a colorable federal defense. The initial causal connection test is a statutory requirement that "serves to overcome the "well-pleaded complaint" rule which would otherwise preclude removal even if a federal defense were alleged." *Mesa,* 489 U.S. at 136, 109 S.Ct. at 968.

To satisfy this first requirement, the defendant must establish that the federal official or agent has " 'direct and detailed control' over the defendant." *Guillory v. Ree's Contract Service, Inc.,* 872 F.Supp. at 347 (quoting *Fung,* 816 F.Supp. at 572 (citing *Ryan,* 781 F.Supp. at 947)). To establish the requisite detail and control requirement, a defendant need only demonstrate that the plaintiff's state court action is derived from activities performed pursuant to federal direction. *Fung,* 816 F.Supp. at 572 (citing *Gulati v. Zuckerman,* 723 F.Supp. 353 (E.D.Pa.1989)).

In the present case, the defendants were compelled under threat of criminal sanctions to deliver Agent Orange to the Defense Department. Between 1962 and 1971, these defendants supplied Agent Orange to the Defense Department under DO-rated contracts.[6] Previous cases have recognized that the Defense Department expressly directed chemical companies to provide a detailed mixture of chemicals known as Agent Orange. *See In Re Agent Orange Prod. Liab. Litigation,* 996 F.2d 1425, 1436 (2d Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1125, 127 L.Ed.2d 434 (1994) (finding

sufficient direction and control over ingredients specified in these government contracts to warrant the use of the government contractor defense notwithstanding the recent limitations on that defense by *Boyle v. United Technologies Corp.,* 487 U.S. at 512, 108 S.Ct. at 2518); *In re "Agent Orange" Prod. Liab. Litigation,* 597 F.Supp. 740, 775, 849 (E.D.N.Y.1984), *aff'd,* 818 F.2d 145 (2d Cir. 1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988); *Uniroyal, Inc. v. Home Ins. Co.,* 707 F.Supp. 1368, 1370 (E.D.N.Y.1988) (both cases analyzing federal control exercised over one defendant's production of Agent Orange).

Plaintiff urges this court to apply the holding of *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, here. In *Ryan* the Eastern District of New York addressed the exact question currently before this court—whether private chemical companies' sale of the chemical compound agent orange to the federal government for use in the Vietnam War constituted actions under color of federal authority for purposes of 28 U.S.C. section 1442(a)(1). *See Ryan,* 781 F.Supp. 934. *Ryan* examined thoroughly the history and appropriate case law governing the application of 28 U.S.C. section 1442(a)(1) and held that the defendants failed to meet the requirement that agent orange was supplied " 'based upon actions taken pursuant to federal direction.' " *Ryan,* 781 F.Supp. at 950 (quoting *Gulati v. Zuckerman,* 723 F.Supp. 353 (E.D.Pa.1989)). The court found that the government sought only to purchase a product previously being produced by these defendants. Because of this finding, the court held "the direct and detailed control over the acts for which the defendants are now being sued is therefore lacking." *Id.*

The court considered the general policy and purposes behind section 1442(a)(1) as supporting its decision. *Id.* It refused to

---

**5.** This court finds the language in *Mesa,* 489 U.S. at 136–137, 109 S.Ct. at 968–969, instructive with respect to the application of the causal connection test. Procedurally, this court must look first to the statutorily mandated causal connection test. The requirement of demonstrating a causal connection between what a federal officer has done and the State prosecution acts to statutorily overcome the "well-pleaded complaint" rule and permits a federal court to then

determine whether the defendants' have presented a colorable federal defense.

**6.** DO-rated contracts required companies to accept and fill governmental orders regardless of existing contracts or orders. In fact, these companies were required to divert all civilian supplies of the herbicide to the Defense Department because of the ensuing shortage of Agent Orange.

invoke federal jurisdiction on the apparent lack State animus toward the federal interests at stake. The court held the federal procurement interest to be "nebulous" and stated that "[i]t is the concern for state court bias against the federal government that is the ultimate justification for section 1442(a)(1) removal." *Id.* at 951. Although a federal interest was a stake in this matter, *Ryan* found no indication that a State could not fairly adjudicate this federal interest and, therefore, remanded the case to State court. *Ryan*, 781 F.Supp. at 951.

This court respectfully disagrees with the decision in *Ryan*. Although the Supreme Court has added other requirements to invoke 1442(a)(1) jurisdiction, it has done nothing to limit the absolute right of removal permitted to those defendants who can meet the additional requirements. The Supremacy Clause entitles defendants who acted under color of federal authority to remove cases in which they have raised a colorable federal defense. *Willingham*, 395 U.S. at 406–407, 89 S.Ct. at 1815–1816. *Mesa* merely reinforced the necessity of demonstrating a colorable federal defense and *International Primate* refused to permit federal agency removal under section 1442(a)(1). *See Mesa*, 489 U.S. at 139, 109 S.Ct. at 970; *International Primate*, 500 U.S. at 85, 111 S.Ct. at 1708. In fact, the *International Primate* Court reinforced the *Willingham* decision and the importance of treating federal officers differently based on the "manipulable complexities involved in determining their immunity." *International Primate*, 500 U.S. at 87, 111 S.Ct. at 1709.

This court finds a substantial federal interest is at stake in this matter. The welfare of military suppliers is a federal concern that impacts the ability of the federal government to order and obtain military equipment at a reasonable cost. Federal interests are especially implicated where, as in this case, the Defense Department expressly issued detailed and direct orders to the defendants to supply a certain product. The specificity of

the order raises this issue to a federal concern subject to removal under section 1442(a)(1). The only remaining question is whether the defendants have raised a colorable federal defense.

Noting the Second Circuit's recognition of the availability of the government contractor defense in a similar situation,[7] this court finds the explicit specifications provided by the government contract orders create a reasonable probability that the government contractor defense would apply in this case.

> The Supreme Court in *Boyle* held that: Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The first two of these conditions assure that the suit is within the area where the policy of the "discretionary function" would be frustrated—*i.e.*, they assure that *the design feature in question was considered by a Government officer, and not merely by the contractor itself.*

*Boyle*, 487 U.S. at 512, 108 S.Ct. at 2518 (emphasis added). The facts that establish the government contractor defense are questions for the jury. The jurisdictional question herein merely asks whether the defendants actions were taken under color of federal authority. This court finds that the government expressly considered the design feature in question, exercised direction and control over the substances used in the production of Agent Orange, and that the defendants provided the substances in conformity with those specifications. Consequently, the discretionary function of the government is called into question and the defendants acted in accordance with federal direction.

The Defense Department expressly contracted for a specific mix of chemicals.[8] The

---

7. *In re Agent Orange Prod. Liab. Litigation*, 996 F.2d at 1436.

8. The contract expressly stated:
HERBICIDE, BUTYL ESTERS:

Of 2, 4–D and 2, 4, 5–T in a 50–50 blend. Product shall consist of the following: 50% of N–Butyl 2, 4–D conforming to MIL–H–51147 (MJ), dtd 19 Jul 63, except: acid purity shall be 99.0%

fact that Agent Orange was being produced in a substantially similar form for civilian use is inconsequential. Furthermore, an ample degree of federal interest is at stake when federal procurement costs are considered. The federal procurement costs that may result from applying the government contractor defense are sufficient to invoke federal jurisdiction notwithstanding the apparent lack of State court biases. Additionally, federal questions arise from the presentation of a colorable federal defense under 28 U.S.C. section 1442(a)(1).

## 2. A Colorable Federal Defense

Defendants contend that the federal common law government contractor defense and the federal defense of immunity under the Defense Production Act, 50 U.S.C.App. § 2061 et seq., are colorable defenses for purposes of 28 U.S.C. section 1442(a)(1).

### a. The Government Contractor Defense

The Fifth Circuit previously held that the government contractor defense is a colorable federal defense, especially when considering military design directives used to meet the exigencies of our national defense. Bynum v. FMC Corp., 770 F.2d 556, 569 (5th Cir. 1985). In Bynum, the Fifth Circuit found that the federal common law provided a basis for a corporation's government contractor defense. Id. at 577–78. Plaintiff, a National Guardsman, brought a products liability suit against a private contractor damages due to injuries that he suffered when a cargo carrier fell off of a bridge. Id. The court examined, in great detail, the state of the law concerning the government contractor defense. See id. at 564–567. The court held that unique federal interests were implicated when the government contracts for specific design specifications for manufacture of military equipment. Id. at 574.

While explaining other court's decisions in similar cases, the court expressly adopted the reasoning of In re "Agent Orange" Product Liab. Litigation, 597 F.Supp. at 847; In re

Related Asbestos Cases, 543 F.Supp. 1142, 1151 (N.D.Cal.1982); McLaughlin v. Sikorsky Aircraft, 148 Cal.App.3d 203, 195 Cal. Rptr. 764, 768 (1983). Bynum, 770 F.2d at 567–568. In these cases, the courts found that federal common law provided a basis for the application of the government contractor defense for suits by servicemen against military contractors who provided products designed by the government. Id. at 567–568. The court in Bynum found that "[a]s long as the design specifications at issue are those for an instrumentality of war and were supplied by the government, the federal interests requiring the displacement of state law and judicial restraint in military matters are fully implicated. Id. at 575.

The court used a two tier analysis to determine whether federal common law provides a government contractor defense. Bynum first considered "whether the question at bar substantially bears upon 'uniquely federal' interests." Id. at 568 (citing Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981); Jackson v. Johns–Manville Sales Corp., 750 F.2d 1314, 1323 (5th Cir.1985) (en banc), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). If federal interests are implicated, the court looks then to applicable federal common law or state law as the federal rule. Id. (citing United States v. Kimbell Foods, Inc., 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979); Georgia Power Co. v. Sanders, 617 F.2d 1112, 1115 (5th Cir.1980) (en banc), cert. denied, 450 U.S. 936, 101 S.Ct. 1403, 67 L.Ed.2d 372 (1981)).

It is important to note that Boyle did not substantially affect the application of the government contractor defense. The court simply eliminated the first element of the government contractor defense, the Feres–Stencel doctrine. Boyle, 487 U.S. at 512, 108 S.Ct. at 2518; Trevino v. General Dynamics Corp., 865 F.2d 1474, 1478–1479 (5th Cir. 1989). The Fifth Circuit found that Boyle did not change the law in this circuit " 'ex-

---

minimum by weight; acid equivalent shall not be less than 79.0% nor more than 0.5% 50% of N–Butyl 2, 4, 5–T conforming to MIL–H–51148 (MJ) dtd 19 Jul 63, except; acid purity shall be

98.0% minimum by weight. The weight of the blend shall be 10.64 lbs. per gallon. 35 gallon steel drum containing 580 pound of product.

**1202**

cept to reject the ideological basis for contractor immunity based on *Feres*.'" *Trevino*, 865 F.2d at 1479 (quoting *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 777 (5th Cir.1988)). The *Feres–Stencel* doctrine stated that the United States was immune from liability to a government contractor for contribution or indemnity when a party has recovered against the contractor for injuries due to actions partially caused by governmental negligence. *See Trevino*, 865 F.2d at 1478 n. 3. The elimination of the *Feres–Stencel* doctrine has no bearing on this case.

In considering a motion to remand, this court is limited to analyzing whether a colorable defense has been raised. Except as a threshold question, it is unnecessary to determine the success of the defense. With this caveat in mind, *Bynum* supplies the answer to the question whether the government contractor defense, in this instance, is a colorable defense. The court stated:

There can be no question that the design of military equipment is, at bottom, a military decision. Often dangerous designs must be used in the military context to meet the exigencies of our national defense, and even military equipment that is relatively safe for every day use may have to be operated on occasion under dangerous conditions or in a manner creating a high risk of harm.

*Bynum*, 770 F.2d at 569. The court further relied on *In re "Agent Orange" Prod. Liab. Litigation*, 534 F.Supp. 1046, 1054 n. 1 (E.D.N.Y.1982), *modified*, 100 F.R.D. 718 (E.D.N.Y.1983), *cert. denied*, 465 U.S. 1067, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984) in quoting:

The purpose of the government contractor defense ... is to permit the government to wage war in whatever manner the government deems advisable, and to do so with the support of suppliers of military weapons. Considerations of cost, time of production, risks to participants, risks to third parties, and any other factors that might weigh on the decisions of whether, when, and how to use a particular weapon are uniquely questions for the military and

should be exempt from review by civilian courts.

This court finds no difference between this analysis of the government contractor defense in suits by servicemen against military contractors and the present case of civilians who worked under the same conditions in connection with these same military contractors. The defendant chemical companies supplied Agent Orange to the Defense Department under specific and express contractual agreements that the defendants were required by law to meet.

*b. The Defense Production Act*

Even if the government contractor defense is considered a standard of care to avoid liability,[9] this court finds that defendants have raised a colorable federal defense under section 707 of the Defense Production Act, 50 U.S.C.App. section 2061 *et seq.* The Defense Production Act states, in relevant part: "No person shall be held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this Act...." 50 U.S.C.App. § 2157. As recognized in *Ryan*, the defendants make out a colorable federal defense under this statute. *See Ryan*, 781 F.Supp. at 945. Agent Orange was produced and delivered to the Defense Department for use in the Vietnam War. *See Id.* (citing *In re "Agent Orange" Prod. Liab. Litigation*, 597 F.Supp. at 844). Defendants supplied this product pursuant to various DO-rated contracts between the government and the defendants. Although a dispute exists as to whether the Defense Production Act applies to plaintiff's claims, no dispute can exist over the application of this Act as a colorable defense.

For the foregoing reasons this court finds that defendants have raised a colorable federal defense. Having demonstrated that they acted under federal authority and having raised a colorable federal defense, this court holds that defendants are entitled to remove this case to federal court under 28

---

9. *See Ryan*, 781 F.Supp. at 945 (holding that the military contractor defense merely establishes a federal standard of care necessary to avoid liability, not a federal defense).

U.S.C. section 1442(a)(1). Defendants also raised a colorable defense under the Defense Production Act, 50 U.S.C.App. section 2061 *et seq.*

*3. Collateral Estoppel*

■ Collateral Estoppel may be applied to bar the adjudication of issues previously decided by a court of competent jurisdiction. *Copeland v. Merrill Lynch & Co., Inc.,* 47 F.3d 1415, 1421–1422 (5th Cir.1995). Four conditions must be met in order to invoke this doctrine:

> (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine.

*Copeland,* 47 F.3d at 1422 (citing *United States v. Shanbaum,* 10 F.3d 305, 311 (5th Cir.1994)).

However, the Supreme Court set out different standards to apply to cases in which a plaintiff seeks to estop a defendant from litigating the same issues that the defendant lost against another plaintiff in a previous case—offensive collateral estoppel. *Parklane Hosiery Co v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). In *Parklane,* the Court recognized that offensive collateral estoppel differs from defensive collateral estoppel because it does not promote judicial economy and may, in fact, be unfair to the defendant. *Id.* at 329–330, 99 S.Ct. at 650–651. Plaintiffs may be more inclined to adopt a "wait and see" attitude toward litigation because they will be able to rely on the previous judgment against a defendant but are not bound by the judgment if the defense wins. *Id.* at 330, 99 S.Ct. at 651.

The Court noted the unfairness inherent with offensive collateral estoppel in the differing incentives to a defendant in vigorously litigating a suit for nominal damages. *Id.* This is especially true if the defendant does not foresee additional litigation arising from this incident or when the judgment is inconsistent with other judgments in favor of the defendant. *Id.*

■ In order to solve the problems inherent with offensive collateral estoppel, the Supreme Court granted broad discretion to the trial courts to determining whether a plaintiff may invoke offensive collateral estoppel. *Parklane,* 439 U.S. at 331, 99 S.Ct. at 651–652; *Copeland,* 47 F.3d at 1423. The Court held that:

> The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of collateral estoppel would be unfair to the defendant, a trial judge should not allow the use of offensive collateral estoppel.

*Id.*

■ Plaintiff contends that the defendants are collaterally estopped from asserting that removal jurisdiction exists based on Judge Weinstein's prior holding in *Ryan,* 781 F.Supp. 934. Plaintiff's use of offensive collateral estoppel rests on the grounds that *Ryan* previously considered the defendants' removal jurisdiction under 28 U.S.C. section 1442(a)(1) and found that the defendants failed to establish federal jurisdiction in that case. *See id.* at 950–953.

*Ryan,* however, was affirmed by the Second Circuit on other grounds. *See In re Agent Orange Prod. Liab. Litigation,* 996 F.2d at 1431–1432. The court did not address removal jurisdiction under 1442(a)(1). Considering similar issues of claim preclusion, the Fifth Circuit has declined to depart from the general rule that " '... once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision.' " *Dow Chemical v. U.S. E.P.A.,* 832 F.2d 319, 323 & n. 24 (5th Cir.1987) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4421 (1981)).

Exercising its broad discretion to consider offensive collateral estoppel, this court finds that other reasons exist that do not warrant permitting plaintiff to use offensive collateral estoppel in this case. First, and foremost, this court is not bound to give preclusive effect to the decision of another district

court, in another circuit, whose decision was affirmed grounds other than those plaintiff seeks to use in this case. Although instructive, *Ryan* has no precedential value in this circuit or for this court. Second, based on the evidence submitted, this court finds that the government exercised sufficient direct and detailed control over the production of Agent Orange to meet 28 U.S.C. section 1442(a)(1) requirements. For these reasons, this court exercises its discretion and refuses plaintiff's invitation to use offensive collateral estoppel in this case.

## CONCLUSION

The defendants produced Agent Orange at the behest of the Defense Department for use in the Vietnam War. The Defense Department exercised sufficient direction and control over defendants' production of Agent Orange to consider defendants' actions to be "under color of federal authority." Defendants have also demonstrated that their actions may be protected by a colorable federal defense. Therefore, as persons acting under color of federal authority in producing this substance, defendants are entitled to remove this case from State court pursuant to 28 U.S.C. section 1442(a)(1).

For the foregoing reasons, plaintiff's motion to remand is in all things DENIED.