**BROWN & WILLIAMSON TOBACCO CORPORATION, Plaintiff,**

v.

**Jeffrey S. WIGAND, Defendant.**

**Civil Action No. 3:95CV–842–S.**

United States District Court,
W.D. Kentucky,
Louisville Division.

Jan. 24, 1996.

James E. Milliman, Middleton & Reutlinger, Louisville, KY, Gordon A. Smith, King & Spaulding, Atlanta, GA, Thomas E. Bezanson, Garyowen P. Morrisroe, Chadbourne & Parke, New York City, Michael J. O'Connell, Parker & O'Connell, PLC, Louisville, KY, Stanley S. Arkin, Arkin, Schaffer & Supino, New York City, for Plaintiff.

James R. Cox, Bryan Todd Thompson, Frank P. Doheny, Jr., Michael M. Hirn, Ste-

phen R. Reilly, Hirn, Doheny, Reed & Harper, Louisville, KY, William E. Johnson, Stoll, Keenon & Park, Frankfort, KY, for Defendant.

### MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the court on the motion of the plaintiff, Brown & Williamson Tobacco Corporation (hereinafter "B & W"), to remand this action to the Jefferson County, Kentucky Circuit Court. We are required to determine if we have jurisdiction over the case pursuant to 28 U.S.C. § 1442(a)(1), upon which removal was based.

### I.

The facts, as recounted in this opinion, are undisputed. On November 21, 1995, B & W filed a lawsuit against Jeffrey S. Wigand (hereinafter "Wigand"), a former employee, in the Jefferson Circuit Court. Wigand served as a vice president for research and development at B & W from January of 1989 until his termination in March of 1993. Since his termination, Wigand has been working as a private citizen here in the Louisville area. In its complaint, B & W accuses Wigand of theft, fraud, breach of contract, breach of fiduciary and common law duties, and violation of the Kentucky Uniform Trade Secrets Act, KRS § 365.880 *et seq.* The complaint also demands a temporary restraining order and temporary and permanent injunctive relief.

The allegations are based on four documents: an Employee Agreement, a Confidentiality Agreement, a Letter of Agreement, and a Settlement Agreement. All of these purportedly prohibit Wigand from possessing, distributing, or discussing any documents or other information which he acquired while a B & W employee or as a result of his B & W employment.

B & W asserts in its complaint that a variety of actions taken by Wigand violated the four agreements he signed with B & W. B & W complains that: (1) Wigand has offered his services as an expert witness in two separate civil suits; (2) Wigand has given the *Wall Street Journal* and the *Washington Post* confidential B & W documents; (3) Wigand has disclosed confidential information and trade secrets in an interview with "60 Minutes"; and (4) Wigand has cooperated with the Mississippi Attorney General in a Mississippi civil case.

On the same day its complaint was filed, B & W was granted a temporary restraining order by the Jefferson Circuit Court. The restraining order prohibits Wigand from using or disclosing any materials, trade secrets, or confidential information. The restraining order also prohibits Wigand from testifying in any proceeding unless he first consults with B & W. Wigand appealed for the dissolution of the temporary restraining order but relief was denied by both the Kentucky Court of Appeals and the Kentucky Supreme Court.

On December 21, 1995, Wigand removed the action to this court. He argues that this court has proper jurisdiction over the action pursuant to 28 U.S.C. § 1442(a)(1), based on his assertion that he is "acting at the direction of an officer or officers of the United States." No party has contended that Wigand is or has been employed by or in any other way connected with the United States government during the time periods which are relevant to this action. Wigand does contend, however, that he is acting at the direction of United States officers based on the fact that he has been served with subpoenas to testify before federal grand juries in the Southern District of New York and the District of Columbia and is subject to orders of the United States District Court for the District of Columbia entered December 14 and 15, 1995, which were ordered sealed by that court and which, therefore, will not be discussed with any greater particularity.

In its remand motion, B & W asserts that Wigand may not invoke federal officer removal merely because he cooperates with federal officials in providing grand jury testimony. Specifically, B & W argues that Wigand has not been sued under color of any federal office and that Wigand has no federal defense upon which removal was based. B & W also contends that Wigand's actions in

state court constitute a waiver of any potential right to removal.

## II.

Title 28 of the United States Code, Section 1442(a)(1) provides:

A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

■■■ A guiding principle of removal jurisdiction is that the party seeking removal has the burden of establishing its propriety. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97–98, 42 S.Ct. 35, 37–38, 66 L.Ed. 144 (1921). "The removal petition is to be strictly construed, with all doubts resolved against removal." *Her Majesty the Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989). *See Wilson v. USDA*, 584 F.2d 137, 142 (6th Cir.1978); *Winters v. Diamond Shamrock Chem. Co.*, 901 F.Supp. 1195 (E.D.Tex.1995), and *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F.Supp. 1305, 1307 (E.D.Ky.1990).

Case law over the years has developed a test to be applied in determining the appropriateness of § 1442(a)(1) removal. In *Winters v. Diamond Shamrock Chem. Co.*, 901 F.Supp. 1195 (E.D.Tex.1995), the court set out the test:

To successfully remove a case under section 1442(a)(1), a defendant must show that (1) they are "persons" within the meaning of the statute; (2) they must have been "acting under color of federal authority" when committing the acts leading to the instant lawsuit; (3) they must assert a colorable federal defense.

*Id.* at 1197 (quoting *Guillory v. Ree's Contract Service, Inc.*, 872 F.Supp. 344, 346 (S.D.Miss.1994)).

The Supreme Court has also discussed these requirements in *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). The Court noted that "federal officer removal must be predicated on the allegation of a colorable federal defense." *Id.* at 129, 109 S.Ct. at 965. The Court also discussed the necessity of a nexus between the suit and the federal actions.

There must be a causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the prosecution of him, for whatever offense, has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty.

*Id.* at 131–32, 109 S.Ct. at 966. *See Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 947 (E.D.N.Y.1992) (federal officer removal "must be predicated upon a showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.").

The court in *Winters* also discussed this nexus requirement. "A defendant must first show that a causal connection exists between what the officer or agent has done while acting under federal authority and the state prosecution." *Winters*, 901 F.Supp. at 1199. The court went on to hold that this requirement mandates that a "federal official or agent has direct and detailed control over the defendant" which is satisfied by a showing that the "state court action is derived from activities performed pursuant to federal direction." *Id.*

■■ Wigand has failed to demonstrate that B & W's state court action is derived from any activities Wigand performed according to federal direction. B & W has alleged that Wigand disclosed and discussed confidential information, documents, and trade secrets in violation of various agreements entered into between B & W and Wigand. These activities include Wigand's testimony in three separate civil suits, Wigand's disclosure of confidential documents

to national newspapers, and Wigand's disclosure of information in an interview with "60 Minutes." These are not activities "performed pursuant to federal direction."

B & W's lawsuit does not mention the federal grand jury subpoenas or the orders of the District of Columbia District Court. This suit was filed before Wigand was served with the subpoenas and before the court orders were entered. Because Wigand has failed to justify application of federal officer removal to this case, we find it unnecessary to discuss the viability of his federal defense argument.

In addition to Wigand's inability to establish a causal connection between the state action and his actions allegedly done pursuant to federal authority, we find the case of *Kaplansky v. Associated YM–YWHA's of Greater New York,* No. 88–CV–1292, 1989 WL 29938 (E.D.N.Y. Mar. 27, 1989) persuasive. In *Kaplansky,* an action was brought in state court for breach of contract and libel. *Id.* at *1. The defendants removed the action to federal court pursuant to 28 U.S.C. § 1442(a)(1). *Id.* at *2. Defendants invoked 28 U.S.C. § 1442(a)(1) because they claimed the complaint included "several causes of action based on defendants' actions in providing information pursuant to a federal grand jury subpoena and at the request of Assistant United States Attorney Jonny J. Frank of this District...." *Id.* The defendants asserted that they were "acting under officers of United States who were acting under color of office" simply by providing grand jury testimony. *Id.*

The court noted that those cases justifying federal officer removal occur where "those 'acting under' federal officers were in effect asked to stand in the shoes of those officers or agents and perform 'official' functions." *Id.* at *3. The court remanded the action and held that testifying is something private citizens are regularly required to do and that such testimony does not make a citizen a federal official or agent. *Id.*

■ Here, although Wigand has been subpoenaed to testify, he has not been directed to perform official functions as an officer or agent of the government. The orders of the District of Columbia District Court, which we have reviewed, also do not transform Wigand into a government agent. While grand jury witnesses do not always appear of their own volition, it would pervert the grand jury's investigatory process to hold that any person compelled to appear before it as a witness by virtue of a subpoena thereby becomes an officer or agent of the United States. In fact, the historical role of the grand jury as a buffer between the sovereign and the citizenry militates against such a result. "Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused...." *Branzburg v. Hayes,* 408 U.S. 665, 688 n. 23, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972) (quoting *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962)).

The orders of the District of Columbia District Court do not countervene this notion. They merely ratify the grand jury's proper investigatory role. We conclude that Wigand is not entitled to invoke the protections of 28 U.S.C. § 1442(a)(1).

A survey of the history of 28 U.S.C. § 1442(a)(1) and its predecessors further supports the conclusion that it is not applicable to the facts of this case. Case law demonstrates that the purpose of the statute is to protect officials who are enforcing federal laws.

Its [28 U.S.C. § 1442(a)(1)] earlier incarnations were drafted to protect officials who faced state government resistance to specific federal laws. The concern underlying each, however, has been the same: that state governments hostile to duly enacted federal laws would be able to frustrate the implementation of those laws by bringing (or allowing to be brought) civil or criminal actions in state court against the federal officials responsible for their implementation.

*Ryan v. Dow Chem. Co.,* 781 F.Supp. 934, 941 (E.D.N.Y.1992).

■ The cases note that the statute's purpose is to protect against this risk by providing these federal officials with an unbiased

federal forum. *Id.* at 944 and 947. *See Lovell Mfg. v. Export–Import Bank,* 843 F.2d 725, 734 (3d Cir.1988). The *Ryan* court held that "removal is not appropriate when the civil or criminal suit brought in state court has only a speculative impact on such [federal] policy." *Ryan,* 781 F.Supp. at 951.

Wigand is not implementing any federal policy at the direction of federal officers or agents. As such, B & W's suit against Wigand cannot have any impact on federal policy involving Wigand.

## III.

Removal of this case based on 28 U.S.C. § 1442(a)(1) is not supported by the facts. There is no basis for federal question jurisdiction in this case. Therefore, remand to the Jefferson Circuit Court is appropriate. An order in conformity with this opinion will be entered this day.

## *ORDER*

For the reasons set forth in the memorandum opinion entered this date, **IT IS HEREBY ORDERED** that the motion of plaintiff, Brown & Williamson Tobacco Corporation, to remand to Jefferson Circuit Court is **GRANTED.** This action is hereby remanded to the Jefferson Circuit Court, Division Nine for all further proceedings.