**Rebecca ARNOLD, By and Through her next friend, Phillip B. ARNOLD, Plaintiff,**

v.

**BLUE CROSS & BLUE SHIELD OF TEXAS, INC., Defendant.**

**Civil Action No. H–96–0346.**

United States District Court, S.D. Texas, Houston Division.

April 30, 1997.

---

**27.** The Delaware Supreme Court has refused to establish a particular "reasonable doubt" standard. *Grobow,* 539 A.2d at 186.

Jesse Rucker Pierce, Clements O'Neill, Pierce & Nickens, Houston, TX, for Plaintiff.

Cynthia Lea Jones, Funderburk & Funderburk, Houston, TX, Anthony F. Shelley, Miller and Chevalier, Washington, DC, for Defendant.

Marsha S. Edney, Department of Justice, Washington, DC, for Movant Office of Personnel Management.

### MEMORANDUM OPINION AND ORDER GRANTING REMAND

ATLAS, District Judge.

Plaintiff Rebecca Arnold ("Plaintiff") originally brought this action against Blue Cross & Blue Shield of Texas, Inc. ("Blue Cross") in state court alleging state statutory violations. Blue Cross removed the action to federal court, and Plaintiff moved to remand. In its Memorandum Opinion and Order of September 10, 1996, ("Order") [Doc. # 37], the Court denied Plaintiff's Motion to Remand [Doc. # 5] and granted the motion of the Office of Personnel Management ("OPM") to Intervene as a Party Defendant [Doc. # 30]. Plaintiff was then permitted to amend her complaint to add a cause of action specifically addressed to OPM [Doc. # 39]. All three parties have since filed motions for summary judgment [Docs. # 48,49, and 61].

Upon further and more detailed consideration, the Court has determined that this case should in fact be remanded to state court. The Court's earlier **Memorandum Opinion and Order** [Doc. # 37], which denied Plaintiff's Motion to Remand and granted OPM's Motion to Intervene, is therefore **VACATED.** Plaintiff's Motion to Remand [Doc. # 5] is hereby **GRANTED.** All Court orders issued following the Memorandum

Opinion and Order of September 10, 1996, are **VACATED**. The pending motions are **DENIED AS MOOT**.

## I. *PROCEDURAL BACKGROUND*

Plaintiff Rebecca Arnold brought this action after her health insurance carrier, Defendant Blue Cross, denied her coverage for treatment of temporomandibular joint disorder ("TMJ"). Plaintiff is insured by Blue Cross because she is a dependent of her father, Phillip Arnold, a federal employee enrolled in the Blue Cross and Blue Shield Service Benefit Plan. Federal employees may elect to receive health insurance for themselves and their dependents by enrolling in plans, such as this one, which are established by contract between OPM, a federal agency, and health insurance carriers.

After diagnosing and treating Plaintiff for TMJ, her dentist, Dr. John E. Scott, submitted a claim for payment to Blue Cross. Blue Cross paid the bill in part but refused payment for the bulk of the claim.[1] Plaintiff's parents and Dr. Scott submitted a number of letters to Blue Cross and to OPM appealing the denial of coverage, but Blue Cross maintained its refusal to pay, and OPM affirmed the denial. *See* Petition, at 15–18. Apparently, Plaintiff's claim was originally rejected on the ground that her treatment was not medically necessary, *see id.* at 16, but the denial was ultimately justified on the ground that her treatment was simply not covered under her health insurance plan, *see id.* at 17–18.[2]

Plaintiff sued Blue Cross in state court alleging two primary causes of action. First, she claims that Blue Cross' failure to cover TMJ violates Article 21.53A of the Texas Insurance Code, which requires that every insurance policy issued in Texas that covers treatment of skeletal joints must also provide similar coverage for TMJ.[3] Second, she claims that Blue Cross' description of its benefits, in its Service Plan brochure, appears to include coverage for TMJ, but since TMJ is not actually covered, Blue Cross' description constitutes false advertising and a deceptive trade practice in violation of Article 21.21 of the Texas Insurance Code.[4]

Blue Cross removed the action, claiming that this Court has federal question jurisdiction under 28 U.S.C. § 1441(b) because Plaintiff's state law claims are preempted by a federal statute, the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.* After Plaintiff moved for remand, Blue Cross attempted to amend its removal notice to allege that federal jurisdiction is also created by 28 U.S.C. § 1442(a)(1), the federal officer removal statute. The Court denied the Motion to Remand, finding that Plaintiff's claims turn on the construction of federal law and that there is a significant federal interest in this litigation. *See* Order, at 5–6. The Court did not address Blue Cross' argument under 28 U.S.C. § 1442(a)(1), *see* Order, at 2 n. 1 (denying as moot Blue Cross' Motion to Amend its Notice of Remand), and also explicitly declined to rule at that time whether Plaintiff's claims were preempted by federal law, *see id.* at 11.

Upon further consideration, the Court has determined that Plaintiff's Motion to Re-

---

1. Blue Cross paid $363.75 of the $3,440.00 claim. *See* Plaintiff's Original Petition ("Petition"), Attachment to Notice of Removal [Doc. # 1], at 15.

2. According to Plaintiff, OPM informed her by letter that " 'the majority of services rendered, while related to treatment of temporomandibular joint dysfunction, were primary orthodontic in nature' and 'consequently ... are subject to exclusion.' " Petition, at 17.

3. Article 21.53A(b) of the Texas Insurance Code mandates that:
   Each health insurance policy delivered or issued for delivery in this state that provides benefits for the medically necessary diagnostic and/or surgical treatment of skeletal joints must include comparable benefits for the medically necessary diagnostic and/or surgical treatment of the temporomandibular (jaw or craniomandibular) joint.

4. Plaintiff alleges that "Blue Cross manipulates the representations in its benefits booklet to deceive persons of average education and intelligence into believing that their TMJ claims are covered when they are not." Petition, at 5. Plaintiff bases her assertion in part on the fact that the Blue Cross brochure includes in a list of oral and maxillofacial surgical procedures for which it provides coverage "[r]eduction of dislocations and excision of temporomandibular joints." *Id.* at 6 (quoting Service Plan, at 23).

mand should be granted. The next section explains why removal is not justified in this case under the well-pleaded complaint rule and examines Blue Cross' argument that it is entitled to remove under 28 U.S.C. § 1442(a)(1).

## II. *FEDERAL REMOVAL JURISDICTION*

### A. *The Well–Pleaded Complaint Rule*

In its previous Order, the Court ruled that the applicability of federal common law supported removal of this action. However, the mere fact that federal law may be involved or that there is a federal interest in the litigation is not sufficient to confer removal jurisdiction upon a federal court. The state courts are competent to interpret federal law as well as adjudicate cases that may involve a significant federal interest. *See Chuska Energy Co. v. Mobil Exploration & Producing, North America Inc.*, 854 F.2d 727, 730 (5th Cir.1988).

Instead, in order to determine whether the case is removable, the Court must examine Plaintiff's claims under the well-pleaded complaint rule. *See Louisville & Nashville Ry. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362 (5th Cir.1995). It is well established that, under this rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).[5] Unless the federal question appears on the face of Plaintiff's complaint, the case may not be removed even if a federal defense is inevitable. "It is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393, 107 S.Ct. at 2430 (citing *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847–48, 77 L.Ed.2d 420 (1983)). *See also Carpenter*, 44 F.3d at 366; *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157, 1161 (5th Cir.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). A defendant simply cannot force a plaintiff who chooses to sue in state court to plead a federal cause of action. *Caterpillar*, 482 U.S. at 398–99, 107 S.Ct. at 2432–33; *Aaron*, 876 F.2d at 1161 n. 7. Even if the factual predicate underlying Plaintiff's complaint *could* have served as the basis for a federal claim, Plaintiff has the prerogative to forgo the federal claim and assert only state law claims in order to prevent removal. "The [well-pleaded complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429.

In this case, Plaintiff has clearly asserted two causes of action under state statutory law. Blue Cross argues that these causes of action are preempted by federal law. However, as just explained, this defense does not in itself confer federal court jurisdiction. Therefore, Blue Cross may prevent remand in this action only by showing that the well-pleaded complaint rule does not apply in this case. Under the circumstances presented here, only two exceptions to the well-pleaded complaint rule are potentially relevant: the complete preemption doctrine and the federal officer removal statute, 28 U.S.C. § 1442.[6] The Court concludes that Blue Cross has not proved that it is entitled to removal under either exception.[7]

---

5. There is no claim that federal diversity jurisdiction exists in this case. "Absent diversity of citizenship, federal-question jurisdiction is required" for removal. *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429–30.

6. As discussed *infra* Section II.C., federal common law is not applicable to the removal question presented here.

7. The removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995).

## B. *Complete Preemption*

██ Under the complete preemption doctrine, Congress may so completely preempt a particular field that any complaint raising claims in that field is necessarily federal in nature. *See Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Only complete preemption statutes provide a basis for federal question jurisdiction when pled as a defense; partial preemption statutes do not. *Caterpillar*, 482 U.S. at 394–99, 107 S.Ct. at 2430–33. Thus, if the FEHBA completely preempts Plaintiff's claims, then removal would be justified in this case. However, for the following reasons, the Court concludes that the FEHBA is not a complete preemption statute. In its previous Order, the Court implicitly rejected Blue Cross' argument that FEHBA is a complete preemption statute by basing its holding instead on the existence of a significant federal interest and the applicability of federal common law. Had the Court determined that the FEHBA is a complete preemption statute, it would not have needed to reserve, for further briefing, the question of whether Plaintiff's state law claims are specifically preempted. If the FEHBA were a complete preemption statute, then the Court could have ruled earlier that Plaintiff's claims are clearly preempted by the federal statute. The following discussion contains a more thorough examination of why the FEHBA is not a complete preemption statute.[8]

First, the language of FEHBA's preemption clause at issue in this case, § 8902(m)(1), makes clear that Congress did not intend for state law to be entirely preempted. Under this clause, only state laws that conflict with contractual provisions between OPM and insurance carriers are preempted:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provision.

5 U.S.C. § 8902(m)(1). The Court need look no further than this clause in deciding the issue of complete preemption. In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992), the Supreme Court explained that:

> When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," *Malone v. White Motor Corp.*, 435 U.S. 497, 505 [98 S.Ct. 1185, 1190, 55 L.Ed.2d 443] (1978), "there is no need to infer congressional intent to preempt state laws from the substantive provisions" of the legislation. *California Federal Savings & Loan Assn. v. Guerra*, 479 U.S. 272, 282 [107 S.Ct. 683, 690, 93 L.Ed.2d 613] (1987).

8. Blue Cross argues, in addition, that the "artful pleading" doctrine justifies removal in this case because Plaintiff's only viable claim arises under federal law and Plaintiff attempted to characterize it instead under state law causes of action. Although the artful pleading doctrine has at times been treated as a separate exception to the well-pleaded complaint rule, the Supreme Court and the Fifth Circuit have blurred these doctrines by suggesting that courts should limit the artful pleading doctrine to cases involving complete preemption. *See Caterpillar*, 482 U.S. at 397 n. 11, 107 S.Ct. at 2432 n. 11; *Carpenter*, 44 F.3d at 369 n. 7; *Aaron*, 876 F.2d at 1161 ("[t]he reasoning underlying the artful pleading doctrine involves the same type of preemption analysis" as the complete preemption doctrine). *See also Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306, 310 n. 5 (3d Cir.1994), *cert. denied*, 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 555 (1995) (referring to complete preemption as the "same principle" as the artful pleading doctrine). Under both doctrines, the dispositive question is whether Plaintiff's state law claims are completely preempted and thus whether her complaint necessarily raises a federal claim. Thus, the Court finds it unnecessary to determine, under the artful pleading doctrine, whether Plaintiff drafted her complaint in good faith. As long as federal law does not create complete preemption, Plaintiff is entitled to plead state law claims and remain in state court even if she framed her complaint with the specific intention of preventing removal. *See Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429–30.

By expressly limiting ·the FEHBA's preemptive effect to those laws or regulations that are inconsistent with insurance carrier contracts, Congress indicated that courts may not assume that the FEHBA preempts all related state law claims but must instead conduct a case-by-case analysis to determine whether a plaintiff's state law claim conflicts with a contractual provision. *See Transitional Hospitals Corp. v. Blue Cross and Blue Shield of Texas, Inc.*, 924 F.Supp. 67, 70 (W.D.Tex.1996). The FEHBA preemption clause establishes that FEHBA preemption is far more narrow than that of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The primary preemption clause of ERISA provides that:

> Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.

29 U.S.C. § 1144(a). Even though ERISA provides broad preemption, *see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987) ("the express pre-emption provisions of ERISA are deliberately expansive"); *Taylor*, 481 U.S. 58, 107 S.Ct. 1542; *Burkey v. Government Employees' Hosp. Ass'n*, 983 F.2d 656, 660 (5th Cir.1993) (discussed *infra* note 17), claims that arguably relate to ERISA plans but do not actually seek relief under them are still not always removable. *See Cypress Fairbanks Medical Center, Inc. v. Pan–American Life Insurance Co.*, 110 F.3d 280 (5th Cir.1997) (holding removal improper because ERISA does not preempt third-party provider's claim against insurer who allegedly misrepresented that insured's treatment would be covered); *Gabner v. Metropolitan Life Ins. Co.*, 938 F.Supp. 1295, 1300–02 (E.D.Tex.1996). Thus, this Court rejects the argument that FEHBA's more confined preemption language renders it a complete preemption statute which may support removal in contradiction to the well-pleaded complaint rule.[9]

█ Second, in *Aaron*, the Fifth Circuit described several requirements for a statute to qualify as a complete preemption statute. Under *Aaron*, in order for a federal statute to preempt state law completely, the statute must:

(1) provide a civil enforcement mechanism that creates a federal cause of action that both replaces and protects the same interests as the preempted state law cause of action;

(2) provide a specific jurisdictional grant to the federal courts to enforce the cause of action created by that federal statute; and

(3) demonstrate clear congressional intent to make the preempted state claims removable to federal court.

*See Aaron*, 876 F.2d at 1161–64; *Coleman v. Alcolac, Inc.*, 888 F.Supp. 1388 (S.D.Tex. 1995). The Court concludes that Blue Cross has not met the *Aaron* test for complete preemption.

With respect to the first *Aaron* factor,[10] in this action the parties dispute whether the

9. The difference between the FEHBA and ERISA has been noted by other courts. For example, in *Transitional Hospitals Corp.*, one district court reasoned as follows:

> Addressing the similarity of the jurisdictional provisions of ERISA and LMRA, the Supreme Court relied on the presumption that "similar language in two labor statutes has a similar meaning." FEHBA's jurisdictional provision lacks similarity to the one found in ERISA or LMRA. Therefore, [Blue Cross] may not ride the coattails of these labor statutes to find congressional intent for complete preemption.

924 F.Supp. at 70 (quoting *Taylor*, 481 U.S. at 64, 107 S.Ct. at 1546–47) (footnotes omitted).

10. It is not clear under Supreme Court and Fifth Circuit law whether the first factor in *Aaron* is a

strict requirement for complete preemption. *Aaron* interpreted a line of Supreme Court cases including *Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In *Avco*, the Supreme Court held that a plaintiff's claim was completely preempted by the Labor Management Relations Act (LMRA), 29 U.S.C. § 301, and was therefore properly removed to federal court even though, at the time, the relief sought by the plaintiff could be obtained only in state court. Thus, the Court suggested that a federal statute may completely preempt state law even if it does not provide a federal replacement for the preempted state law remedy. *See Caterpillar*, 482 U.S. at 391 n. 4, 107 S.Ct. at 2429 n. 4.

The current uncertainty regarding whether the first *Aaron* factor is required for complete pre-

FEHBA provides a civil enforcement mechanism that creates a federal cause of action that replaces and protects the same interests as Plaintiff's state law statutory claims. Blue Cross argues that Plaintiff's true complaint is that Blue Cross wrongfully denied payment for Plaintiff's treatment. Since the FEHBA requires every carrier contract to include a provision obligating the carrier to pay for treatments that OPM determines Blue Cross is bound by contract to cover, *see* 5 U.S.C. § 8902(j), Blue Cross contends that OPM's contractual power to demand payment constitutes the replacement federal enforcement mechanism required for complete preemption under *Aaron.* However, for the following reasons, the Court does not agree.

First, although Plaintiff initiated this action as a result of Blue Cross' denial of coverage for her claim, her state law claims do not actually assert that Blue Cross is contractually obligated to pay for her treatment. Instead, Plaintiff's complaint implicitly admits that TMJ is not covered under her health plan. Her claims allege that (i) Blue Cross' health benefits policy violates Texas law because the policy does not cover TMJ and (ii) Blue Cross has engaged in false advertising and deceptive trade practices because Blue Cross' Service Plan brochure fails to make this lack of coverage clear. Thus, OPM's authority to require Blue Cross to pay whatever claims OPM determines Blue Cross to be *contractually* obligated to pay does not protect nor replace the same interests as Plaintiff's state law causes of action.

Second, OPM's mechanism for forcing Blue Cross to provide coverage for claims OPM determines must be paid provides a remedy for the benefit of *OPM*, not for individual plan participants.[11] Under § 8902(j) of the FEHBA, OPM's contract with Blue Cross must require Blue Cross to comply with OPM's coverage determinations. If Blue Cross refuses, OPM has the power merely to cancel Blue Cross' contract or impose penalties on Blue Cross. The FEHBA does not provide a federal cause of action allowing *individuals* who disagree with OPM's determinations to pursue their own claims against carriers.[12] Although OPM may discontinue business with carriers who do not adhere to their contracts with OPM, this remedy belongs to OPM and not to the individual plan participants. Likewise, with respect to Plaintiff's second claim, pursuant to § 8902a(c)(2), OPM may sanction a carrier who makes false statements or misrepresentations. However, this remedy also belongs only to OPM and not to individual beneficiaries. The FEHBA creates no cause of action for beneficiaries who wish to seek redress for themselves personally against carriers that engage in false advertising and deceptive trade practices.[13]

With respect to the second *Aaron* factor, the FEHBA does include two provisions specifically granting jurisdiction to the federal courts. However, neither applies to Plaintiff's action. One provision, § 8902a(h), regards only suits "brought by the Attorney

emption is well described in *Brown v. Crop Hail Management, Inc.,* 813 F.Supp. 519, 524–25 n. 3 (S.D.Tex.1993). However, the Court need not dwell on this legal ambiguity because it finds that the second and third *Aaron* factors are also not met in this case.

**11.** As the court in *Transitional Hospitals Corp.* noted, "FEHBA does not contain civil remedies similar to those provided in ERISA to allow a beneficiary to recover improperly withheld benefits." 924 F.Supp. at 70 (citing *Goepel,* 36 F.3d at 312).

**12.** Until last year, OPM's *regulations* provided that individuals who disagreed with OPM's coverage determinations could then seek legal remedies directly against the carriers. 5 C.F.R. § 890.107. On April 5, 1996, the regulations changed and now require individuals to pursue

legal action directly against OPM and not the carriers. However, for the reasons discussed next in the text, this change in regulations does not satisfy the complete preemption requirement.

**13.** The Court rejects the conclusion reached by the court in *Hanson v. Blue Cross Blue Shield of Iowa,* 953 F.Supp. 270, 275 n. 4 (N.D.Iowa 1996), that OPM's promulgation of a new administrative regulation could provide support for the proposition that the FEHBA is a complete preemption statute. *See infra* pp. ——––——. In *Hanson,* the court decided that OPM's new regulation provides the necessary civil enforcement provision because it allows beneficiaries to bring suit directly against OPM. However, this Court disagrees. The new regulation does not provide a mechanism for beneficiaries to seek redress for injuries they allege were caused by their carrier and not necessarily by OPM.

General in the name of the United States," not suits brought by individual beneficiaries. The other, § 8912, provides federal jurisdiction only for actions brought against the United States, not for actions brought against insurance carriers.

Finally, with respect to the third *Aaron* factor, the FEHBA does not demonstrate clear congressional intent to make preempted state claims removable to federal court. Blue Cross has not cited any provision of the FEHBA that indicates that beneficiaries' state law actions against carriers must be brought in federal court. Instead, Blue Cross argues that federal jurisdiction exists in this case because OPM's current *regulations* require individuals alleging wrongful denial of coverage to bring actions against OPM. *See* 5 C.F.R. § 890.107. However, as explained earlier, Plaintiff has not alleged a wrongful denial of coverage. Plaintiff's complaint implicitly admits that her TMJ treatment is not covered by her insurance plan but contends instead that, under Texas law, (i) it *should* be covered and (ii) Blue Cross' brochure inaccurately represented that it is covered. Plaintiff does not dispute that if she had brought her action against OPM alleging a wrongful denial of coverage, her claim would have arisen under the FEHBA and thus her action would be subject to removal. However, Plaintiff did not choose to bring such an action against OPM.

OPM's new regulation, purportedly requiring her to bring her claim against it, went into effect in April 1996, which was after Plaintiff filed her complaint in December 1995. Under OPM's previous regulation, individuals were instructed to bring claims for benefits directly against their insurance carriers. It is not clear whether OPM's new regulation applies retroactively to require that OPM be named as a defendant.[14] However, the Court need not determine whether the new regulation applies to Plaintiff's case. Regardless of its applicability, the regulation does not itself provide a basis for removal

jurisdiction. On the one hand, if it does *not* apply to this action, then Blue Cross clearly cannot rely on it as evidence that claims covered by FEHBA must be brought in, or are removable to, federal court. On the other hand, even if it does apply, it is simply an administrative regulation, not a statutory provision. A regulation promulgated by an administrative agency does not indicate *congressional* intent to create federal removal jurisdiction as required under *Aaron.* Instead, in order to discern congressional intent, the Court must consider the language Congress enacted in the statute itself. *See Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617 (" 'the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of *Congress.*' Accordingly, '[t]he purpose of *Congress* is the ultimate touchstone' of preemption analysis") (emphasis added) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); *Malone,* 435 U.S. at 504, 98 S.Ct. at 1189–90); *Matter of Cajun Electric Power Coop., Inc.,* 109 F.3d 248 (5th Cir.1997) (federal regulations may preempt state law but only if promulgated pursuant to congressional intent); *Schmeling v. NOR-DAM,* 97 F.3d 1336, 1344 (10th Cir.1996) (finding that an agency "regulation does not ... manifest congressional intent").[15] As described *supra* at 731–32, FEHBA's preemption clause does not demonstrate congressional intent that the FEHBA provide complete preemption of related state law claims. Furthermore, the fact that the previous regulation remained in effect for ten years without modification by Congress supports the conclusion that the new regulation cannot be considered to represent *congressional intent. See* 51 F.R. 18565 (May 21, 1986).

Blue Cross strenuously argues that both of Plaintiff's claims are preempted under the

---

14. In its previous Order, the Court explicitly chose not to rely on the new regulation. *See* Order, at 5 n. 3.

15. In *Hanson,* discussed *supra* note 13, the court decided that OPM's new regulation provided the

civil enforcement provision necessary for complete preemption and did not address the issue of whether OPM's new regulation could indicate congressional intent.

FEHBA.[16] However, even if both of Plaintiff's claims are preempted, this fact would still not render the FEHBA a complete preemption statute nor provide removal jurisdiction. See *Caterpillar*, 482 U.S. at 398, 107 S.Ct. at 2432–33 ("[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted ... does not establish that they are removable to federal court").[17]

## C. Federal Common Law

■ In its prior Order, the Court discussed the possible applicability of federal common law to this case in holding that there was removal jurisdiction. See Order, at 5–6. Upon further detailed consideration, the Court has determined that federal common law is not probative of this dispute. Although Blue Cross attempts generally to invoke the federal common law for jurisdictional purposes, Blue Cross' specific arguments are that Plaintiff's claims are preempted by a federal *statute*, the FEHBA (or, more correctly, by contractual provisions entered into by OPM pursuant to the FEHBA). The Court, in its initial Order, failed to focus on

---

**16.** Although the Court does not reach these issues, it would appear that Plaintiff's first claim is preempted but that her second claim may not be.

Plaintiff's first claim, which seeks a declaration that Blue Cross is obligated under Texas insurance law to provide coverage for TMJ, is likely preempted by the FEHBA if Blue Cross is correct that its contract with OPM excludes coverage for TMJ. A state law mandating coverage for a specific treatment directly conflicts with a contract requiring that the treatment not be covered.

With respect to Plaintiff's second claim, however, there is no provision of Blue Cross' contract with OPM that conflicts with Texas law prohibiting false advertising and unfair trade practices *per se*. Although OPM has the statutory right to terminate its contract with and impose penalties upon a carrier that makes false statements or misrepresentations, see 5 U.S.C. § 8902a(c)(2), and even though this right must be incorporated into OPM's contract with Blue Cross, pursuant to § 8902a(a)(2)(B), this right belongs to OPM and does not appear to conflict with an individual beneficiary's right to seek redress for similar conduct under state law.

**17.** Blue Cross argues that this case is removable because the only Fifth Circuit case to address the FEHBA, *Burkey v. Government Employees' Hosp. Ass'n*, 983 F.2d 656, 660 (5th Cir.1993), found that the FEHBA preempted the plaintiff's state claims and compared the FEHBA to ERISA, which it noted "broadly preempts state law tort and contract claims." However, *Burkey* was an action brought originally in federal court on diversity grounds and thus raised no issue of removal jurisdiction. See *Transitional Hospitals Corp.*, 924 F.Supp. at 69 (rejecting argument that *Burkey* precludes remand involving assertion of FEHBA preemption defense).

The *Burkey* court's comparison of the FEHBA to ERISA does not mean that the court interpreted the FEHBA to be a complete preemption statute which could support removal when raised as a defense. The *Burkey* court did not even address the question of complete preemption but instead only briefly noted the similarity between the two statutes without comparing them in any detail. Neither the facts of *Burkey* nor the court's language warrant such an interpretation.

As the court explained in *Transitional Hospitals Corp.*,

[The *Burkey* court] did not concern itself with the question of complete preemption and undertook no analysis to suggest its holding should be so stretched. Although FEHBA "broadly" preempts state law relating to federal employee health benefit plans ... Congress has not gone so far as to completely preempt the field. FEHBA does not "convert[] an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."

924 F.Supp. at 69, 70–71 (quoting *Taylor*, 481 U.S. at 64, 107 S.Ct. at 1546–47). See also *Goepel*, 36 F.3d at 315–16 (citing *Burkey* in support of argument that FEHBA may preempt state law but nevertheless rejecting argument that FEHBA preemption defense supports removal jurisdiction).

In *Burkey*, the court held that a plaintiff's *remedies* for a carrier's breach of contract are limited to those prescribed under the FEHBA and reversed a court's enhancement of those remedies under state law that provided for attorneys' fees and statutory delay penalties. However, the court's conclusion in *Burkey* that the plaintiff's remedies were preempted by FEHBA does not mean that an assertion of a FEHBA preemption defense provides grounds for removal. As the Fifth Circuit later noted in *Carpenter*, in order for there to be complete preemption, it must be the plaintiff's "cause of action, and not a remedy ... [that is] preempted." 44 F.3d at 366–67 & n. 2 (citing *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)).

Furthermore, in *Burkey*, the plaintiff was clearly suing on the contract itself. In the case at bar, on the other hand, Plaintiff is not suing for breach of contract. Because her state law causes of action do not challenge Blue Cross' assertion that it is not contractually obligated to provide coverage for TMJ, Plaintiff has not sued on the contract itself. Thus, not only did the *Burkey* decision fail to address the question of complete preemption and removal jurisdiction, it involved a situation, distinct from the case at bar, involving a suit for breach of contract.

this dichotomy; the Court implicitly ruled that federal common law could completely preempt Plaintiff's state law actions. The Court now concludes that a defense that federal common law applies to a dispute cannot in itself support removal. Thus, the Court's initial ruling was incorrect and is vacated.

In its Order, the Court relied on *Caudill v. Blue Cross and Blue Shield of North Carolina,* 999 F.2d 74, 78 (4th Cir.1993), which held, in a case involving a federal employee contesting Blue Cross' denial of coverage for her medical treatment, that the applicability of federal common law justifies removal jurisdiction in the same context presented in the case at bar. In *Caudill,* however, the court explicitly declined to reach the issue of complete preemption and instead peremptorily concluded that *Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), controlled the outcome of the case. *See Caudill,* 999 F.2d at 77.

The Court now concludes, after more detailed parsing of *Boyle,* that *Caudill's* analysis is insufficient. In *Boyle,* the Supreme Court held that federal common law may preempt state law in cases involving "'uniquely federal interests.'" *Boyle,* 487 U.S. at 504, 108 S.Ct. at 2514 (*quoting Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640, 101 S.Ct. 2061, 2066–67, 68 L.Ed.2d 500 (1981)). However, *Boyle did* not address the issue of removal jurisdiction, nor did it modify the *Caterpillar* rule that federal preemption of state law, even when asserted as an inevitable defense to a well-pleaded state law claim, does not provide a

basis for removal. The *Boyle* case was originally brought in federal court based on diversity jurisdiction. *See Goepel,* 36 F.3d at 314 ("*Boyle* is distinguishable from this case because it did not involve the removal of 'what purports to be a state law claim' from state court to federal court on the basis of federal question jurisdiction.... Thus, *Boyle* merely deals with a federal defense to a state claim and is therefore a preemption rather than a complete preemption case").[18]

By avoiding the issue of complete preemption and jumping, without basis, to the conclusion that the concept of federal common law described in *Boyle* in itself justified removal, the *Caudill* court erroneously ignored the well-pleaded complaint rule. If the *Caudill* court assumed that federal common law could itself provide complete preemption in this area, then it did so contrary to Supreme Court authority. The doctrine of complete preemption clearly requires *congressional* intent to preempt state law. *See Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617. As discussed earlier, the FEHBA's preemption clause clearly demonstrates that Congress did not intend to make the FEHBA a complete preemption statute. Thus, by concluding that unenacted federal common law can provide complete preemption in the context of federal employee health insurance, the *Caudill* court directly contradicted Congress' expressed intent that preemption be limited to cases of direct conflict between state law and a carrier contract. In *Cipollone,* the Supreme Court stated that, pursuant to "the familiar principle of *expression unius est exclusio alterius:* Congress' enactment of a

---

**18.** Furthermore, the holding in *Boyle* is itself not as broad as Blue Cross claims. In *Boyle,* the Supreme Court held that an independent military contractor that manufactured a federal government helicopter pursuant to government specifications should not be held liable under state law for a design defect that allegedly caused the death of a Marine. Under Virginia law, the contractor could have been liable in tort for designing a helicopter whose emergency escape hatch opened outward instead of inward and thus prevented the Marine from escaping when the helicopter crashed underwater. Because the contractor had built the escape hatch to open outward pursuant to the government's precise specifications and because military contracting involves "uniquely federal interests," the Court

concluded that the government's specifications created federal common law which preempted the decedent's survivors' state tort law claim. However, in holding that federal common law displaces state laws under which government contractors may be liable for design defects, the Court narrowly limited the scope of this ruling to cases in which:

(1) the United States approve[s] reasonably precise specifications; (2) the equipment conform[s] to those specifications; and (3) the supplier warn[s] the United States about the dangers in the use of the equipment that are known to the supplier but not to the United States.

*Boyle,* 487 U.S. at 512, 108 S.Ct. at 2518–19.

provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." 505 U.S. at 516, 112 S.Ct. at 2618. Neither the Fifth Circuit, nor any other federal Court of Appeals, has, to this Court's knowledge, adopted this error committed by the court in *Caudill. See Goepel*, 36 F.3d at 316 (noting that, besides for *Caudill*, all other Court of Appeals cases addressing the FEHBA preemption issue were initiated in federal district court and thus did not consider removal jurisdiction). In contrast, other courts have recognized that the conclusion in *Caudill* contradicts Supreme Court authority. *See Goepel*, 36 F.3d at 315 ("we do not view the Supreme Court's decision in *Boyle* as an expansion of the complete preemption doctrine, and we reject the *Caudill* court's construction of *Boyle* as a case establishing an alternative basis for the removal of a state claim to federal court"); *Transitional Hospitals Corp.*, 924 F.Supp. at 71 n. 4 ("The Court declines the invitation to follow *Caudill* and find removal jurisdiction in the absence of complete preemption"). This Court has found no case other than *Caudill* which has held that federal *common law* can create complete preemption.

The Court recognizes that the federal district courts have been split on the question of whether the FEHBA preemption defense can provide removal jurisdiction. *See, e.g., Transitional Hospitals Corp.*, 924 F.Supp. 67 (W.D.Tex.1996) (granting remand); *Mondor v. Blue Cross & Blue Shield*, No. 94–2069 (S.D.Texas, Oct. 20, 1994) (denying remand). However, the courts that have examined this issue the most closely have recognized the limits imposed by the well-pleaded complaint rule in this situation. *E.g., Goepel*, 36 F.3d 306; *Howard v. Group Hospital Service*, 739 F.2d 1508, 1513 (10th

Cir.1984) (concurring opinion)[19]; *Transitional Hospitals Corp.*, 924 F.Supp. 67; *Baptist Hospital of Miami, Inc. v. Timke*, 832 F.Supp. 338 (S.D.Fla.1993); *Lambert v. Mail Handlers Benefit Plan*, 886 F.Supp. 830 (M.D.Ala.1995). Furthermore, a number of state courts have amply proven their ability to evaluate carriers' FEHBA preemption defense. *See, e.g., Fink v. Delaware Valley HMO*, 417 Pa.Super. 287, 612 A.2d 485 (1992) (finding preemption); *Macon–Bibb County Hospital Authority v. National Treasury Employees Union*, 265 Ga. 557, 458 S.E.2d 95 (1995) (not finding preemption). *See also Goepel*, 36 F.3d at 316 (" 'State courts are competent to determine whether state law has been preempted by federal law,' and absent complete preemption, 'they must be permitted to perform that function' with regard to state law claims brought before them") (quoting *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co.*, 858 F.2d 936, 942 (3d Cir.1988)). "[B]ecause the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns, which mandate strict construction of the removal statute." *Carpenter*, 44 F.3d at 365–66.

Thus, the Court concludes that federal common law cannot serve as the basis for complete preemption or removal jurisdiction.

### D. *Federal Officer Removal Statute*

After Plaintiff filed her Motion to Remand, Blue Cross moved to amend its Notice of Removal [Doc. # 11] to allege federal jurisdiction under 28 U.S.C. § 1442(a)(1), which allows removal by federal officers or persons acting under them. Plaintiff opposed Blue Cross' Motion to Amend, arguing both that

---

**19.** In *Howard*, the majority opinion concluded that the district court lacked removal jurisdiction because the federal interest in the litigation between a federal employee and his federally contracted health insurance carrier was not sufficient to invoke federal common law. This Court does not adopt the *Howard* majority's reasoning because the specific applicability of federal common law was not properly raised as an issue in either *Howard* or the case at bar. Instead, the Court agrees with the concurring opinion in *Howard*, which notes that, even if federal law

controls the outcome of the case, a federal court does not have removal jurisdiction if the federal law is raised as a defense. Contrary to Blue Cross' argument, the Fifth Circuit in *Burkey* did not reject *Howard;* instead, the *Burkey* court, in ruling that a plaintiff's breach of contract claim was preempted, merely noted that several Courts of Appeals found FEHBA preemption of state law claims but that the *Howard* court approved the use of a state law interpretation of a FEHBA provision. *See Burkey*, 983 F.2d at 659 n. 4.

the Motion was untimely and that Blue Cross was not entitled to removal under this statute. In its previous Order, the Court, finding a different basis to support removal, did not address Blue Cross' Motion. However, since the Court has reconsidered and altered its prior ruling, it must now examine Blue Cross' argument under § 1442(a)(1). The Court concludes that Blue Cross' Motion to amend should not be denied on the ground of untimeliness but that Blue Cross has failed to meet its burden of showing that it is entitled to removal under § 1442(a)(1).

### 1. Timeliness of Amendment to Notice of Removal

Plaintiff argues that Blue Cross' attempt to assert another ground for removal came too late because Blue Cross filed its Motion to Amend 88 days after it was served with process in this case. Although Blue Cross' original Notice of Removal was timely filed, Plaintiff argues that the Motion to Amend was filed after the 30 day time limit allowed for asserting removal under 28 U.S.C. § 1446(b). Plaintiff concedes that a notice of removal may be amended after the expiration of the time limit pursuant to 28 U.S.C. § 1653, which allows a party to cure technical defects in its jurisdictional allegations. However, Plaintiff claims that Blue Cross' amendment constitutes more than a mere attempt to cure a technical defect but instead is an improper attempt to assert an entirely new basis for jurisdiction.

The Court disagrees. In *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 831, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989), the Supreme Court interpreted § 1653 to allow a party to correct "statements about jurisdiction" but not "defects in the jurisdictional facts themselves." The Court explained that an amendment may be permitted in cases in which "jurisdiction 'in fact existed at the time the suit was brought or removed, though defectively alleged.'" *Id.* (quoting predecessor statute, 28 U.S.C. § 399 (1946)). The Fifth Circuit has stated that " '[s]ection 1653 provides a method for curing defective *allegations* of jurisdiction' where the defect is merely one of the pleading and not one of an absence of proof of facts necessary to establish [jurisdiction]." *Stafford v. Mobil Oil Corp.,* 945 F.2d 803, 806 (5th Cir. 1991) (quoting *Aetna Casualty & Surety Co. v. Hillman,* 796 F.2d 770, 775 (5th Cir.1986)).

■ Blue Cross' allegation that it qualifies as a person acting under a federal officer, for purposes of 28 U.S.C. § 1442(a)(1), does not bring any new facts to this litigation. In its Notice of Removal, Blue Cross describes generally its relationship with OPM in. providing health insurance coverage for federal employees pursuant to the FEHBA. Thus, it should come as no surprise to Plaintiff that Blue Cross might argue that, in performing the actions underlying Plaintiff's complaint, Blue Cross acted under the direction of OPM. The only surprise was Blue Cross' use of this allegation as an alternate legal basis for removal jurisdiction. Because Blue Cross changed only the way it used its pleaded facts, rather than attempting to change or materially add to the facts themselves, the Court will consider Blue Cross' argument on the merits.[20]

---

20. At the same time it filed its Motion to Amend, Blue Cross submitted two affidavits which it intended to provide support for its argument regarding jurisdiction under § 1442(a)(1). *See* Affidavit of Joseph Orange ("Orange Affidavit"), Exhibit 2 to Defendant's Opposition; Declaration of Lucretia Myers ("Myers Declaration"), Exhibit 1 to Defendant's Opposition. Even though these affidavits were filed after the 30–day time limit for removal had expired, the Court has taken them into consideration because they merely provide more detailed support for arguments Blue Cross had stated generally in its original Notice of Removal. *See* 14A Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3733 ("the petition may be amended only to set out more specifically grounds for removal that already have been stated, albeit imperfectly, in the original petition"). The Fifth Circuit has approved the practice of district courts' considering evidence that clarifies earlier jurisdictional allegations:

> In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying [the jurisdictional allegations.] The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction.

*Coury v. Prot,* 85 F.3d 244, 249 (5th Cir.1996),(citations omitted). In any case, even if these affidavits do present facts materially different from those alleged more generally in Blue Cross' origi-

## 2. Applicability of the Federal Officer Removal Statute

■ Under 28 U.S.C. § 1442(a)(1), an action may be removed that is brought against "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office." In order to invoke § 1442(a)(1), a non-officer defendant has the burden of proving: (1) that it is a "person" within the meaning of the statute; (2) that it acted under the direction of a federal officer; (3) that there is a causal nexus between the· plaintiff's claims and the acts the defendant performed under color of federal office; and (4) that it has· a colorable federal defense to the plaintiff's claims. *See Mesa v. California,* 489 U.S. 121, 124–25, 129–31, 134–35, 109 S.Ct. 959, 962–63, 964–66, 967–68; 103 L.Ed.2d 99 (1989); *Winters v. Diamond Shamrock Chemical Co.,* 901 F.Supp. 1195, 1199 (E.D.Tex.1995); *Pack v. AC and S, Inc.,* 838 F.Supp. 1099, 1101 (D.Md.1993).[21] With respect to the fourth requirement, Blue Cross clearly has raised a colorable federal defense of preemption to Plaintiff's claims.[22] However, the Court is not persuaded that Blue Cross has satisfied its burden under the first, second, and third requirements of this test.

■ *"Person" Under § 1442(a)(1)*–With respect to the first requirement, the Court does not believe that Blue Cross qualifies as a "person" for the purposes of § 1442(a)(1). In *International Primate Protection League v. Administrators of Tulane Educational Fund,* 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991), the Supreme Court held that the first clause of § 1442(a)(1) allows individual officers, but not *agencies,* to remove cases brought against them. After examining the statute's grammatical structure and legislative history, the Court interpreted this clause to allow removal by any officer of the United States, *any officer of any agency of the United States,* or any person acting under such officer. In light of the Court's reasoning that Congress enacted § 1442(a)(1) in order to protect *individual* officers,[23] it appears that Blue Cross, a corporation, does not qualify as a "person acting under" an officer for purposes of this statute.

The Court is aware of the Fifth Circuit's ruling in *Peterson v. Blue Cross/Blue Shield of Texas,* 508 F.2d 55 (5th Cir.1975), that corporate defendants are entitled to remove under § 1442(a)(1) as "persons" acting under a federal officer. However, the viability of this decision is doubtful in light of the Supreme Court's more recent ruling in *International Primate.* Because of this uncertainty and because other district courts have continued to allow corporate defendants to remove under § 1442(a)(1), *see, e.g., Akin v. Big Three Industries, Inc.,* 851 F.Supp. 819, 822–23 (E.D.Tex.1994) (following *Peterson* despite *International·Primate),* and *Winters,* 901 F.Supp. at 1198, this Court does not base its rejection of Blue Cross' § 1442(a)(1) argument solely on this ground. Instead, the Court concludes that, even if Blue Cross were to qualify. as a "person" for purposes of § 1442(a)(1), Blue Cross nevertheless has

nal Notice of Removal, Plaintiff is not prejudiced by the Court's consideration of them. For reasons discussed *infra* at 740–742, the Court finds that these affidavits do not help defendants, but instead support the Court's ultimate conclusion that removal jurisdiction is absent in this case.

**21.** Under *Noble v. Employers Insurance of Wausau,* 555 F.2d 1257, 1259 (5th Cir.1977), Blue Cross may not remove pursuant to § 1442(a)(1) on the mere basis that it is a federal insurer.

**22.** As discussed *supra* note 16, it appears that this preemption defense may well shield Blue Cross from Plaintiff's first claim. While preemption is less clear as to Plaintiff's second claim, Blue Cross has raised at least a colorable defense of preemption. In any case, if this Court had jurisdiction over one claim, it could exercise sup-

plemental jurisdiction over Plaintiff's other state law claim, pursuant to 28 U.S.C. § 1367. *See Kramer v. Smith Barney,* 80 F.3d 1080, 1083 n. 1 & 1086 (5th Cir.1996).

**23.** Given the complexity surrounding qualified immunity for individual officers, the Supreme Court concluded that "Congress could rationally decide that individual officers, but not agencies, needed the protection of a federal forum in which to raise their federal defenses." *International Primate,* 500 U.S. at 86, 111 S.Ct. at 1709 (citing *Willingham v. Morgan,* 395 U.S. 402, 405, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969) ("Obviously, the removal provision was an attempt to protect federal officers from interference by hostile state courts")).

failed to satisfy its burden of proving two of the other elements of the standard for § 1442(a)(1) removal.

**■■■■ *"Under Direction of a Federal Officer" and "Causal Nexus With Plaintiff's Claims."*—**In order to satisfy the second and third requirements of the § 1442(a)(1) test stated above, Blue Cross must prove that it acted under the direction of a federal officer while performing the actions that underlie Plaintiff's complaint. In order to establish that it acted under the direction of a federal officer, Blue Cross must establish that the federal officer or agent has " 'direct and detailed control over the defendant.' " *Winters*, 901 F.Supp. at 1199 (quoting *Guillory v. Ree's Contract Service, Inc.*, 872 F.Supp. 344, 347 (S.D.Miss. 1994)). " 'Direct control' is established by showing strong government intervention and the possibility that a defendant will be sued in state court as a result of the federal control." *Pack*, 838 F.Supp. at 1103.[24] Blue Cross has not shown that, with respect to its actions underlying Plaintiff's claims, it acted under "direct control" of a federal officer. Plaintiff's claims against Blue Cross are that Blue Cross' policy failed to include coverage for TMJ, in violation of Texas statutory law, and that Blue Cross' benefits brochure violated Texas law against false advertising and deceptive trade practices. Therefore, Blue Cross must prove that, in deciding not to include coverage for TMJ and in disseminating the alleged misrepresentations in its benefits brochure, it acted under the "direct control" of a federal officer.

With respect to Plaintiff's first claim, Blue Cross argues that through an OPM officer, [OPM] determines which benefits are covered and which are excluded under the Service Benefit Plan. Those determinations are binding by contract on both the carrier and the enrollee. Blue Cross has no authority simply to charge the government for benefits that enrollees want or think should be added.... Blue Cross' independence in performing its contract is "severely circumscribed," and its activities "are carefully monitored" by officers and agents of OPM.

Defendant's Opposition, at 23–24 (quoting *Gurda Farms*, 358 F.Supp. at 847). Thus, Blue Cross argues that its act of including and excluding specific benefits, which underlies Plaintiff's first claim, is directly controlled by an OPM officer. However, as the second sentence of this quotation makes clear, OPM does not unilaterally determine what benefits are included in the Blue Cross service plan. Instead, OPM and Blue Cross together *contract* to determine what benefits will be included. Blue Cross admits that this contract is negotiated but urges that OPM officers maintain sufficient control over the determination of benefits because OPM has the final authority to approve what benefits will be included.[25]

The Court is not persuaded by this argument. In any contract, both parties have the right to approve or disapprove the final agreement. If either party disapproves, it merely need not enter the contract. Blue Cross has offered no evidence to show that

---

**24.** One district court has explained:

[There is] no precise standard for the extent of control necessary to bring an individual with [sic] the "acting under" clause. The number and complexity of federal institutions and programs would render impossible the formulation of such a standard. What it comes down to is that the court in each case must ascertain to what extent defendants act under federal direction and to what extent as independent agents.

*Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.*, 358 F.Supp. 841, 844 (S.D.N.Y. 1973).

**25.** In support of this assertion, Blue Cross submits the affidavit of Joseph Orange, Managing Director of Customer Relations for Blue Cross'

Federal Employee Program. Orange testifies that:

[T]he annual negotiations over contract benefits and premiums between OPM and the carriers are vigorous, [but] OPM has the final decision to approve the benefits, the limitations on benefits, and the premiums of each contract. 5 U.S.C. §§ 8902(d), (i); § 8903.

Orange Affidavit, ¶ 13. In addition, Blue Cross submits the Declaration of Lucretia Myers, OPM's Assistant Director for Insurance Programs. Myers testifies that:

OPM negotiates the benefits and premiums on behalf of Federal employees but, in accordance with § 8902(d) of the FEHBA, OPM has final approval authority over the benefits and limitations in each plan.

Myers Declaration, ¶ 6.

its contract negotiations with OPM involve anything other than arms-length bilateral give-and-take. Pursuant to the FEHBA, OPM negotiates with various insurance carriers to obtain the best benefits coverage packages for federal employees that it can at the price it is willing or authorized to pay. According to Blue Cross, OPM contracts with approximately 400 health benefits plans throughout the country, and all federal employees can choose among at least seven plans in which to enroll. *See* Orange Affidavit, ¶ 7. Because the plans vary in their coverage of specific benefits, it is apparent that OPM does not merely produce a list of benefits for which it requires coverage. Instead, the record establishes that the differences among plans result from the fact that OPM enters separate negotiations with each carrier.

Although Blue Cross has not submitted any specific evidence regarding whether it was primarily Blue Cross or OPM who determined that treatment for TMJ be excluded from Plaintiff's plan, Blue Cross directs the Court's attention to a case that illustrates how exclusions under FEHBA plans may be proposed and negotiated. In *Tackitt v. Prudential Ins. Co. of America,* 758 F.2d 1572 (11th Cir.1985), the Eleventh Circuit concluded that OPM did not act arbitrarily and capriciously in *approving* a benefit exclusion *proposed* by two insurers. Nothing in the record before this Court indicates that any different procedure was used in this case. It thus appears that OPM merely approves or rejects offers made by insurers, rather than imposing "detailed control" over the final list of covered treatments.[26]

Even if OPM has the right to make the final approval of a proposed contract, this authority is materially different from the officers' power in the cases in which defendants have successfully asserted that they acted under federal control for purposes of

§ 1442(a)(1) removal. *See, e.g., Winters,* 901 F.Supp. 1195; *Akin,* 851 F.Supp. 819; *Pack,* 838 F.Supp. 1099. In those cases, involving government military contractors, the defendants clearly showed that federal officers exerted direct control over their disputed actions. In *Akin,* the defendant contractor built jet engine parts "pursuant to Air Force specifications." 851 F.Supp. at 823. In *Winters,* "the defendants were compelled under threat of criminal sanctions to deliver Agent Orange to the Defense Department.... [T]he Defense Department expressly issued detailed and direct orders to the defendants to supply a certain product." 901 F.Supp. at 1199–1200.[27] In *Pack,*

> the government here contracted with Westinghouse to build turbine generators under government specifications during the World War II period. Officers of the Navy and Maritime Commission had extensive control over the construction, design and testing of the turbines. Indeed, the government would specify and approve the type of asbestos cloth to be used when insulating valves and flanges. It monitored Westinghouse's performance and on occasion it returned drawings and specifications for revision. After installation of the turbines aboard a ship, the government performed sea trials, and reviewed and approved the results.

838 F.Supp. at 1103.

In contrast, in the case at bar, there is no evidence that Blue Cross was *compelled* to provide benefits, or prevented from offering other benefits, as unilaterally *specified* by OPM. Instead, this case appears more similar to a case distinguished by the *Pack* and *Akin* courts, *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 950 (E.D.N.Y.1992), *aff'd on other grounds,* 996 F.2d 1425 (2d Cir.1993), *cert. denied,* 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 434 (1994). In *Ryan,* the court did not find "direct and detailed control"

---

**26.** Although Orange testifies that "in 1981, to meet the FEHBA Program's federal appropriation, OPM required all carriers to reduce benefits substantially," Orange Affidavit, ¶ 24, Blue Cross has not alleged or proven that OPM specifically directed Blue Cross to remove treatment for TMJ from its list of covered benefits.

**27.** These "contracts required companies to accept and fill governmental orders regardless of existing contracts or orders. In fact, these companies were required to divert all civilian supplies of the herbicide to the Defense Department because of the ensuing shortage of Agent Orange." *Winters,* 901 F.Supp. at 1199 n. 6.

because the government "sought only to buy ready-to-order" Agent Orange. Because an insurance carrier does not actually create a product, but instead merely agrees to pay for certain benefits under a contract, the service Blue Cross sells to OPM is more like the "ready-to-order" quality of the sale in *Ryan* than the "made-to-order" sales in *Pack* and *Akin.* Therefore, the Court concludes that, with respect to Plaintiff's first claim, Blue Cross has failed to establish that, in not providing coverage for TMJ, it acted under the "direct control" of OPM.

With respect to Plaintiff's second claim, that Blue Cross' benefits brochure violated Texas law against false advertising and deceptive trade practices, Blue Cross has not established that OPM controlled the language and contents of Blue Cross' brochure. Blue Cross alleges that "OPM issues the Statement of Benefits for each FEHBA plan." Defendant's Motion to Amend, at 3; Notice of Removal, at 4.[28] However, even if OPM publishes and has "final authority" over the wording of the Statement of Benefits, the brochure still reflects the result of contractual negotiations between OPM and Blue Cross. As discussed above, the Court is not convinced that OPM exerts "direct control" over Blue Cross in these negotiations. Simply because OPM "issues" the Statement does not mean that OPM unilaterally determines what is included.

Furthermore, with respect especially to Plaintiff's second claim, Blue Cross may not satisfy its § 1442(a)(1) burden by vaguely alleging that it performed its disputed actions under the direction of OPM. In *International Primate,* the Supreme Court noted that, in light of its conclusion that the reference to "agency" in the first clause of § 1442(a)(1) merely modified "officer" (*i.e.* "officer of ... any agency [of the United States]"), the reference to "him" in the second clause ("or person acting under him") must refer to an individual federal officer and not to an agency. *See* 500 U.S. at 82, 111 S.Ct. at 1706–07. Therefore, Blue Cross has the burden to prove that it acted under the direction, not of OPM, but of an individual federal officer.[29]

Throughout its Notice of Removal, Opposition to Plaintiff's Motion to Remand, and Memorandum supporting its Motion to Amend, Blue Cross refers only to acts it performed pursuant to its contract with *OPM.* The only reference Blue Cross makes to an individual federal officer at OPM is its allegation that Lucretia Myers, Assistant Director for Insurance Programs, "is 'responsible for the oversight of negotiation and administration of all contracts' under FEHBA." Defendant's Opposition, at 23 (quoting Myers Declaration, ¶ 2). With respect to Plaintiff's second claim, Blue Cross does not allege or offer any proof at all that Myers is the officer who oversees the publication of Blue Cross' benefits brochure. Instead, Blue Cross merely alleges that "*OPM* issues the Statement of Benefits for each FEHBA plan."

---

**28.** Orange testifies that:

OPM has final authority over the FEHBA Statements of Benefits, including the content, wording, format, structure, and presentation of benefits, limitations, and exclusions. When OPM has approved the benefits and limitations and other provisions of the Statement of Benefits (brochure) for the Service Benefit Plan for the following contract year, OPM causes RI 71–5 to be published and distributed to federal employees and annuitants during the fall prior to the annual open enrollment period. 5 U.S.C. § 8907(b).

Orange Affidavit, ¶ 13. Myers testifies that:

A brochure for each FEHB plan generally is issued by OPM.... OPM and the carrier negotiate the terms and conditions of the contract statement of benefits for the plan but, in accordance with § 8907(b) of the FEHBA, OPM has final authority over the provisions of the brochure. OPM causes FEHB plan bro-

chures to be printed and distributed ... for the information of interested Federal employees. Myers Declaration, ¶ 6.

**29.** In its Motion to Amend Notice of Removal, Blue Cross alleges that it was acting "under color of officers of the United States Office of Personnel Management." Although the Court will not reject Blue Cross' argument on the technical basis that its Motion to Amend did not itself name any officer individually, the Court concludes that Blue Cross has the burden to prove that it meets the § 1442(a)(1) requirements with respect to individual *named* officers of OPM. Blue Cross may not escape *International Primate* merely through alleging and proving that it acted under the direction of "officers" of OPM. This vague allegation is no more specific than, and is therefore equivalent to, the impermissible generalized allegation that it acted under the direction of OPM as an entity.

Defendant's Motion to Amend, at 3 (emphasis added); Notice of Removal, at 4. With respect to Plaintiff's first claim, even if Blue Cross' bare assertion that Myers oversees contract negotiations with carriers suffices as an allegation that it acted under control of an individual federal officer, for the reasons explained above the Court rejects Blue Cross' attempt to argue that it acted under the "direct control" of OPM officers in determining what benefits would be included in its contract.[30]

For these reasons, the Court concludes that Blue Cross is not entitled to removal under § 1442(a)(1).

### III. *JUDICIAL ECONOMY CONSIDERATIONS*

Having concluded that the prior denial of remand was in error, this Court must now consider the proper remedy for this error. Plaintiff filed her Motion to Remand in March, 1996; the Motion was denied in September, 1996. At the time of the denial, the Court granted OPM's Motion to Intervene. The parties do not dispute that if OPM had been originally named as a defendant in Plaintiff's complaint, then because Plaintiff's claims against OPM would have been based on the FEHBA, this action would have been removable. However, Plaintiff did not name OPM as a defendant and, instead, strenuously opposed OPM's Motion to Intervene. The Court must now consider (1) whether, as a result of OPM's addition as a party, it has properly acquired jurisdiction so that remand is no longer necessary, and (2) whether the passage of time and considerations of judicial economy militate against granting remand at this time.

This term, the Supreme Court addressed a very similar situation in *Caterpillar, Inc. v. Lewis*, —— U.S. ——, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).[31] In *Lewis*, the plaintiff brought her action in state court, and the defendant removed the case on the basis of diversity jurisdiction. The plaintiff filed a motion to remand, raising, among other arguments, the fact that the court had not yet dismissed a nondiverse defendant who had substantially settled its dispute with the plaintiff. The district court denied the plaintiff's motion to remand without specifically addressing this argument. The case proceeded to trial, judgment was entered for the defendant, and the plaintiff appealed. On appeal, the Sixth Circuit determined that the district court erred in denying the plaintiff's motion to remand and so vacated the judgment and ordered that the case be remanded to state court. Upon further appeal, however, the Supreme Court noted that federal jurisdiction existed at the time of trial because the nondiverse defendant had, by that time, been dismissed from the case. Reversing the Sixth Circuit, the Court concluded that, because the district court had jurisdiction at the time of trial and because the litigation had already proceeded to final judgment, for the sake of judicial economy the case should not be sent back to state court.

The case at bar presents a similar situation. This Court mistakenly denied Plaintiff's Motion to Remand but discovered this error after a party that could provide a basis for federal jurisdiction had been joined in the litigation. However, two issues distinguish this case from *Lewis*. First, in *Lewis*, by the time the Court of Appeals had recognized the district court's error in denying remand, the case had already proceeded to trial, and final judgment had been entered. Here, in contrast, there has been no trial, and no further judicial resources have been

---

30. In addition, Blue Cross argues that OPM officers, acting under Myers, "review the appeals of disputed claims brought by enrollees such as plaintiff to determine whether the disputed benefits are covered under the FEHBA contract. If the official determines that the benefit is covered, then Blue Cross is statutorily required to pay for that benefit." Defendant's Opposition, at 23 (citing 5 U.S.C. § 8902(j)). However, Plaintiff is not claiming that TMJ was covered by the contract. Therefore, OPM officers' control over determin-

ing what benefits Blue Cross is obligated to pay under its contract with OPM has no nexus with Plaintiff's claims.

31. This case is not to be confused with the Supreme Court case discussed earlier involving the well-pleaded complaint rule, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

expended on this case since the Order denying remand.[32]

Second, in *Lewis*, at the time it denied the motion to remand, the district court lacked jurisdiction only because it had not yet dismissed one nondiverse defendant who had reached a settlement with the plaintiff. Thus, the only contingency standing in the way of federal jurisdiction was the court's need to perform a ministerial act. Since the plaintiff had voluntarily settled with the nondiverse defendant, it was by the plaintiff's choice that the nondiverse defendant would no longer be a party to her case. In the litigation at bar, however, the jurisdictional defect was cured by this Court's granting OPM's Motion to Intervene over Plaintiff's objection. Since Plaintiff opposed this intervention, the Court's ruling required a substantive consideration of the merits of the intervention motion and was not merely a ministerial act.

Thus, the Court concludes that the Supreme Court's justifications in *Lewis* for overlooking an earlier erroneous denial of remand do not apply to this case. Although the Court believes that it is better situated than a state court to adjudicate a matter involving interpretation of the FEHBA and to determine the scope of the statute's preemptive effect, the Court must look to Congress' intent to determine whether removal is proper here. *See Taylor*, 481 U.S. at 66, 107 S.Ct. at 1547–48 ("the touchstone

of the federal district court's removal jurisdiction is not the 'obviousness' of the preemption defense but the intent of Congress").[33] Because Congress did not render the FEHBA a complete preemption statute, a plaintiff is free to bring and keep a state law complaint against her federal employee health insurance carrier in state court even if the carrier argues that the plaintiff's claims are preempted by the FEHBA.

Although a year has passed since Plaintiff filed her Motion to Remand and eight months have passed since the Court denied the Motion, the Court concludes that the proper course of action is to correct its error now, rather than allow the passage of more time and expenditure of effort in this federal court litigation.

The Court is also mindful of the lessons taught by *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746 (5th Cir.1996), in which the Fifth Circuit reversed a district court's denial of remand and ordered that the case be returned to state court for a new trial *after* the case had proceeded to trial in federal court and final judgment had been entered.[34] The Court concludes that, in this case, remand at this time will save, not waste, judicial resources. Since the Court has discovered its earlier error and the case has not yet reached final judgment, the Court finds it is bound to correct its earlier ruling, rather

**32.** The Court recognizes, of course, that a great deal of attorney resources has been expended since the remand was denied. However, it appears that the attorneys' recent work, undertaken after the denial of remand, can be substantially applied to the litigation that will ensue in state court. In conjunction with their currently pending motions, the parties have extensively briefed the preemption question, which the state court must now consider.

**33.** The court in *Transitional Hospitals Corp.* agreed that, as a matter of policy, it would make sense for federal courts to have jurisdiction over cases raising the issue of FEHBA preemption but recognized the courts' duty to refrain from usurping jurisdiction not authorized by Congress:

As a practical matter, the reasons stated by Congress for the breadth of ERISA's preemption apply equally to health plans under FEH-

BA. Because the federal courts have been favored with jurisdiction over ERISA litigation, the addition of FEHBA litigation seems only logical. These issues, however, fall clearly within the realm of the legislative branch and Congress has not expressed its intent to completely preempt state law relating to FEHBA plans.

924 F.Supp. at 70 n. 3.

**34.** The holding in *Sid Richardson* does not appear to be affected by the Supreme Court's recent decision in *Lewis*. In *Sid Richardson*, the Court of Appeals determined that the district court never acquired jurisdiction, whereas in *Lewis* federal jurisdiction existed at the time of trial. Although the jurisdictional defect has been technically cured in the case at bar, for the reasons described earlier the Court concludes that other distinctions between this case and *Lewis* weigh in favor of granting remand at this time.

than to remain silent and proceed improperly with the litigation.

## IV. CONCLUSION

For the reasons discussed above, it is hereby

ORDERED that the Court's **Memorandum Opinion and Order** [Doc. # 37], issued September 10, 1996, is **VACATED.** It is further

ORDERED that all Court orders issued following the Order of September 10, 1996, are **VACATED.** It is further

ORDERED that **all pending** motions [Docs. # 48, 49, and 61] are **DENIED AS MOOT.** It is further

ORDERED that **Plaintiff's Motion to Remand** [Doc. # 5] is **GRANTED.** It is further

ORDERED that this case is **REMANDED** to the District Court of Harris County, Texas, 129th Judicial District, as Cause No. 95–61781.